THOMAS H. SAMPLE, APPELLEE, v. SUSAN O. SAMPLE, APPELLANT.

FILED JUNE 4, 1908.    No. 15,219.

1. **Divorce:** EXTREME CRUELTY. Whether accusations of infidelity made by one spouse against the other constitute extreme cruelty within the meaning of the statute must be determined by the facts of each particular case. In no case will they be given that effect unless they are shown to be either unfounded or malicious.

2. **Husband and Wife:** MAINTENANCE. A wife is not guilty of desertion in leaving the domicile of a husband who, addicted to drunkenness and association with women of doubtful character, fails to support her; and in such case she is entitled to an award of a reasonable sum for the support of herself and minor children until such time as the plaintiff shall provide them a suitable home and support, and shall satisfy the court that he is ready and willing, in good faith, to amend his conduct.

APPEAL from the district court for Gage county: WILLIAM H. KELLIGAR, JUDGE. *Reversed.*

*Hazlett & Jack,* for appellant.

*W. H. Ashby,* contra.

CALKINS, C.

The plaintiff, Thomas H. Sample, and the defendant, Sarah O. Sample, were married in 1887, and had three children, aged, in 1905, 16, 12 and 7 years, respectively. For some years they had lived in Beatrice, in this state; but in June, 1904, the defendant, with her three children, removed to Boston, Massachusetts, and in July, 1905, the plaintiff filed a petition in the district court for Gage county, praying for a divorce from the defendant on the ground of cruelty and desertion. Service was had by publication, and a decree of divorce was taken by default August 29, 1905. On October 24, 1905, the defendant filed a petition and affidavit to set aside this decree, tendering an answer, in which she denied the allegations

made against her in the plaintiff's petition, and charged him with habitual drunkenness, adultery and failure to support her and their said children. She did not herself ask for a divorce, but prayed that an order might be made requiring the plaintiff to provide for the support of herself and children. On May 25, 1906, the petition to set aside said decree was granted, and the defendant was permitted to file her answer to the plaintiff's petition. No reply seems to have been filed, but the case was tried upon the merits as if the new matter alleged in defendant's answer had been controverted. The district court found for the plaintiff, and again rendered judgment granting him a divorce. From this judgment the defendant appeals.

1. As the desertion charged in the plaintiff's petition is neither alleged nor proved to have continued for the statutory period, it may be disregarded.

The precise charge of cruelty in the plaintiff's petition was that, "commencing with the year 1899, the said defendant has been guilty of extreme cruelty toward plaintiff, without cause or provocation on his part, in this: that said defendant would accuse this plaintiff of drunkenness, and of having sexual intercourse with women other than defendant, and accused plaintiff of associating with lewd women, and accused this plaintiff of being untrue to her, and constantly annoyed plaintiff by such taunts and accusations, harsh language and scornful actions; that said accusations, taunts, harsh language and scornful actions were all in the presence of plaintiff's children and others, and all for the purpose of humiliating this plaintiff, and said defendant tried to induce his children to be known by some other name than that of said plaintiff." To prove these allegations the plaintiff was sworn as a witness, and practically disclaimed the charge that defendant had accused him of drunkenness. With reference to the charge of improper conduct with other women, he says that, if he met a woman on the street, or went to a woman's house to hang paper, the defendant would

ask him not to go, and say he had been around some old hag; and, in answer to a question if she had charged him with having sexual intercourse with other women, he replied: "Yes, sir; in that way every woman I would see was an old rip." Upon his cross-examination he admitted that he "went out and got a little full after her continual carrying on," and admitted that he became familiar with a woman described in the testimony as of questionable character; but he insisted that their intimacy did not begin until after his wife left him. An examination of the testimony discloses that, in making this denial, he was referring to a time when his wife left him for a period some years prior to her going to Boston. He also called as a witness his father, who testified that she complained to him of the plaintiff's running with other women and staying out late nights, and that she would get mad at him and not speak to him for a week. He also testified that she accused plaintiff of drunkenness, but admitted upon cross-examination that she had some grounds for such complaint. The plaintiff also called his brother as a witness, who testified that on one occasion when the plaintiff was late to supper she complained, and said to him: "I suppose you have been out with the old hags all this time."

The defendant produced witnesses who testified to specific instances of the plaintiff's association with the woman already mentioned, under circumstances that would have justified his wife's suspicions of the existence of improper relations between them, and the facts so related were not denied by the plaintiff upon the stand. The strongest support for the charge in the plaintiff's petition is found in the testimony of the defendant, who said: "I frequently did talk with him about his drunkenness, which was witnessed by me and my children, and I frequently talked with him as to what I believed his relations were with Mrs. ———, and I did accuse him of being untrue and unfaithful to me, and it is very probable that some of this talk may have been in the presence of our children.

As to the correct language that I made use of at those times, I would say that I have no doubt it was harsh at times, because I was very indignant, and felt outraged and disgraced at his conduct and neglect of me, but I will say that that was not always true, because at other times I endeavored to persuade him and induce him for my sake, and his sake, and the children's sake, not to have anything more to do with this woman; but whatever I said my purpose was not to humiliate him, but to put a stop to the way he was living and going on, and that he might so conduct himself that he might maintain me and the children, and I have never at any time tried to induce his children to be known by any other name than his name."

Whether the conduct of the wife under the circumstances shown amounts to extreme cruelty within the meaning of the statute is therefore presented by the record. Unfounded and malicious accusations of infidelity, when made by the husband against the wife, have frequently been held to constitute such cruelty. *Berdolt v. Berdolt,* 56 Neb. 792; *Walton v. Walton,* 57 Neb. 102. Whether such accusations, when made by a wife against a husband, should be given the same effect has been doubted. *McAlister v. McAlister,* 71 Tex. 695, 10 S. W. 294; *Pfannebecker v. Pfannebecker,* 133 Ia. 425. But it is not necessary to make a distinction founded upon sex; the real question being the effect that such accusations produced, when made by one spouse against the other, in the case under consideration. Whether such accusations constitute cruelty must be determined as a matter of fact in each particular case. In this case the plaintiff does not seem to have been especially sensitive to either charge; and we should hesitate to hold that the accusations constitute cruelty, even if they were shown to be unfounded. In every case we have examined which holds such accusation to amount to cruelty, an essential element has been the untruth of such charges and the lack of any foundation for the same. We are not prepared to hold

that a wife, whose husband is addicted to drunkenness and to open association with women of doubtful character, may not complain of such conduct and admonish him against its continuance, without being guilty of such cruelty as will entitle him to a divorce; and we therefore conclude that there was nothing in the evidence to support the finding for the plaintiff.

2. The defendant in her answer asked the court to make a suitable allowance for the support of herself and children. It is settled in this state that a wife may bring a suit in equity to secure support and alimony without asking for a divorce. *Earle v. Earle,* 27 Neb. 277, 20 Am. St. Rep. 667; *Cochran v. Cochran,* 42 Neb. 612; *Brewer v. Brewer,* 79 Neb. 726. From what we have already said, it follows that the defendant was justified in leaving the plaintiff under the then existing circumstances. A wife is not guilty of desertion in leaving the domicile of a husband who, addicted to drunkenness and association with women of doubtful character, fails to support her; but we cannot adjudicate her right to live in separation, for that would be in effect to grant a divorce, for which she does not pray. The order for support where divorce is not prayed for must always be temporary in its nature; the court granting the same retaining jurisdiction to make such modifications in the order as changed conditions necessitate. In this case the district court should award to the defendant a reasonable sum for the support of herself and minor children until such time as the plaintiff shall provide them a suitable home and support, and satisfy the court that he is ready and willing, in good faith, to amend his conduct.

We therefore recommend that the judgment of the district court be reversed and this cause remanded for further proceedings in accordance with this opinion.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed

and the cause remanded for further proceedings in accordance with such opinion.

REVERSED.