BERTHA M. VOTAW, APPELLANT, V. HORACE E. VOTAW, APPELLEE.

FILED JANUARY 24, 1912.   No. 16,587.

Divorce: EXTREME CRUELTY: QUESTION OF FACT. False accusations of marital infidelity may constitute extreme cruelty on the part of a husband making them, but whether a wife should be granted a divorce on that ground depends upon the facts of each case.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Wilcox & Halligan,* for appellant.

*J. G. Beeler* and *Hoagland & Hoagland,* contra.

ROSE, J.

Plaintiff sued her husband for a divorce on the ground of extreme cruelty. After proofs had been adduced at great length on both sides her action was dismissed, and she has appealed to this court for the relief denied below.

As husband and wife the parties lived together at North Platte for ten years. They have two children. Defend-

ant was a locomotive engineer on the Union Pacific railroad during nine years of their married life, but left the railway service, and thereafter devoted his time to the milling business at Maywood, a village located a few miles from North Platte. The family residence, however, was not changed, and defendant drove home from his mill once in a week or two. The proofs indicate that he had a phlegmatic temperament, and that his wife was affected by a nervous ailment described as cardiac neurosis.

December 1, 1908, defendant went home in the evening after dark and found company. A young woman who lived there, two young men invited by her, and plaintiff were playing cards. Plaintiff thought she heard her husband at the barn, went to greet him, and called his name, but he gave her a surly answer and soon approached her at the house in a jealous rage. The guests soon left. He falsely accused his wife of criminal intimacy with one of the young men who was there when he arrived. The children cried. The mother screamed, and finally, as a result of the false accusation and the accompanying ordeal, went into convulsions. In the meantime neighbors heard the commotion and tried to call a policeman. A woman pounded on the house outside, but, failing to quiet the storm within by that means, entered and upbraided defendant in his own home. He denies that he accused his wife of marital infidelity, but he admitted on cross-examination that the false imputation had been in his mind. If the words employed by him did not contain the accusation in direct terms, they nevertheless imputed the false charge. They were so understood by his wife, and the cruel thrust was no less painful on account of the form in which it was delivered. After his anger had subsided, he confided to his wife the secret that he had thought of going down town for a revolver, with the purpose of ending his own life and that of another. Plaintiff understood that she was included in the contemplated tragedy, but he denies that he ever had any intention of harming her. A week later he came home in the evening

and saw his wife with one of the children going to the next-door neighbor's. He imagined his child was a man, and inquired afterward of the children and of the young woman who stayed at their home who the man was. The same evening he went down town, after having refused to tell his wife why he was going. Fearing he would return with a revolver, she fled with her children to the home of a sister who lived in the neighborhood. The sister armed one of her sons with a revolver and put him on guard in a bedroom. Defendant came a little later, and from the outside called the sister by name. Not receiving any response, he broke in a door, entered the house, and inquired for his wife and children. An interview with plaintiff was arranged, and resulted in another case of neurasthenic prostration.

There are circumstances under which a false accusation of marital infidelity may constitute "extreme cruelty" within the meaning of that term as used in the statute relating to divorce, but whether a divorce should be granted on that ground depends upon the facts of each case. *Sample v. Sample,* 82 Neb. 37. The law being as thus stated, counsel for plaintiff were somewhat astonished at the trial court's refusal to grant her relief, but the explanation is to be found in other facts. Reprehensible as defendant's behavior was, its enormity and plaintiff's danger were exaggerated in her own mind by her nervous disorder. Thus magnified, her wrongs were communicated to her children and to her sister. It is perfectly apparent from the record that defendant loves his wife and children. Her own proof indicates that no suspicion of her infidelity had ever before entered his mind. His misconduct occurred in December, and he was sued in January following. There is no evidence of cruelty at any other time. When his wife was prostrated he sent for a physician and cared for her. He tried to restore former relations. He acknowledged the wrong he had done. He went to the young man of whom he had entertained the unfounded suspicion, and to others, and

admitted his fault, with the hope of arresting the scandal he had started and of enlisting their aid in his efforts to win back his wife's affections. He broke into the home of his wife's sister for the same purpose. She was reassured by his appearance and statements and felt no danger, though a few minutes earlier she had armed her own son for plaintiff's protection. Considering defendant's disposition, his attempts to make reparation and to pacify his wife were pathetic.

From the evidence it seems that, when defendant was returning from Maywood, he met on the highway a woman who told him his wife and children had been out riding, and that their companions included the young man already mentioned. When he reached home, a horse hitched to a two-seated conveyance was standing in front of his house. There was gaiety within and the young man was there. Defendant's anger and the false accusation followed. According to the greatest of dramatists, "Trifles light as air are to the jealous confirmations strong as proofs of holy writ." Though defendant had been schooled in the dangers of the engineer's cab, he lost his head as soon as jealousy crept into his bosom. The conditions disclosed will not prevent the parties from resuming their former relations. While his jealousy was no justification for his misconduct, the circumstances show that he did not deliberately make the charge, believing it to be false. He did not repeat it, but tried to make amends. These considerations no doubt appealed strongly to the trial court, and the judgment of dismissal is here adopted as correct.

AFFIRMED.