## MAHAFFY ET AL. v. MAHAFFY.

| 63 | 55 |
| 85 | 286 |

| 63 | 55 |
| 113 | 15 |

| 63 | 55 |
| 135 | 442 |
| 135 | 443 |

| 63 | 55 |
| f143 | 122 |

1. **Practice in Supreme Court**: SUPPLEMENTAL ABSTRACT TO PRESENT THE RECORD AS CORRECTED, AFTER APPEAL, IN THE COURT BELOW. In this case, appellants had filed their abstract, showing the record of the trial court in an action based upon an ante-nuptial contract, and the appellee had filed an amended abstract, alleging that neither the execution of said contract, nor the contract itself, appeared of record in the court below. Thereupon appellants suggested a diminution of the record, and had leave to amend the same. They then appeared in the court below and had the record there so corrected as to show the introduction of the said contract, and the consideration thereof by counsel and by the court. At a subsequent term of this court, appellants filed an amended and supplemental abstract, showing the introduction and consideration of the contract in the court below:—*Held*, against appellee's objection, that this supplemental abstract was properly before this court as a part of the record, and that the case must be determined upon its merits. *Pearson v. Maxfield*, 47 Iowa, 135, and *Dedric v. Hopson*, 62 Iowa, 562, distinguished.

2. **Ante-nuptial Contract**: FRAUD IN PROCURING: FACTS NOT CONSTITUTING. Upon consideration of the facts of this case as established by the evidence, (see opinion,) it is considered that the claim made by defendant, that her signature to the ante-nuptial contract in question was obtained by fraud and undue influence, cannot be sustained, and that the contract is valid, and must be enforced.

3. ———: CONSTRUCTION OF: "RIGHTS OF DOWER AND INHERITANCE" DOES NOT INCLUDE HOMESTEAD: EFFECT OF "SWEEPING CLAUSE." Where it was provided in an ante-nuptial contract that, upon the death

of the husband, a certain sum should be paid to the wife, "the same to be in lieu and stead of any dower or rights of inheritance therein (i. e. the husband's estate) given or created by operation of law," and the wife therein agreed as follows: "I hereby agree and bind myself to receive and accept the said sum in full payment, and in entire and complete satisfaction, of all my rights of dower and inheritance as the widow and heir of the party of the first part in his said estate, both real and personal," after which comes the following clause: "*and I hereby now renounce and relinquish all claim, right, title and interest therein by reason of the said relation of wife or widow of the said Mahaffy;*" held that the words, "rights of dower and inheritance," used in the contract, did not include the widow's right to occupy the homestead—that not being a right either of dower or of inheritance, and that the last quoted clause was added simply in the nature of a "sweeping clause,"· to be restricted in its meaning by the subject-matter, and with no intent to limit the widow's rights further than was already done by the specific language preceding it in the contract, and that the word "therein," used in said last clause, refers to "dower and inheritance" and not to "estate." Compare *Mahaffy v. Mahaffy*, 61 Iowa, 679.

4. **Practice in Supreme Court**: JUDGMENT NOT APPEALED FROM NOT CONSIDERED. Where in an equitable action a new party plaintiff is brought in by amendment to the petition, who claims an interest in the land in controversy, and the defendant answers the amendment, claiming for herself an interest in the share claimed by the new party plaintiff, and asks that she be awarded this interest in the final judgment in the case, *held* that her answer must be regarded as a cross-bill to the amendment to the petition, and, judgment having been rendered for the plaintiffs in general, this was an adjudication against her as to that, and it cannot be reviewed at her request upon an appeal taken by the plaintiffs alone.

*Appeal from the Des Moines District Court.*

WEDNESDAY, MARCH 19.

THE plaintiffs are the children of William Mahaffy, deceased, and the defendant is his widow. This is an equitable action, brought by the plaintiffs to enforce the specific performance of an ante-nuptial contract, entered into, as they allege, between the said William Mahaffy and the defendant, in contemplation of marriage, whereby it was agreed between said parties that, in case she survived said Mahaffy, she should be paid out of his estate the sum of six hundred dollars, with

six per cent interest thereon from the date of his death, and that she would receive and accept this sum in lieu and stead of any dower right, or right of inheritance in his estate, and of any other right, title or interest which might accrue to her therein by reason of her marriage with him. They allege that the parties were married after this contract was entered into, and that William Mahaffy has since died intestate, and that, at the time of his death, he was the owner of a farm of one hundred and thirty acres, and personal property of the value of from two thousand five hundred to to three thousand dollars; that the administrator of his estate has tendered to defendant said sum of six hundred dollars, with interest, as provided in the contract, but that she refuses to accept the same, and that she is in possession of, and asserts a right to continue to occupy, the portion of said farm which before his death was occupied by said William Mahaffy as a homestead.

The defendant admits that she was married to said William Mahaffy, and that he has died since the marriage, and that she has continued to occupy the homestead since his death. She also admits that, on the day of her marriage, she signed a paper or contract, which Mahaffy had procured to be prepared, but denies that its terms and conditions were as alleged by plaintiffs; and she alleges that her signature was obtained to said contract by fraud; that she was induced to sign it in ignorance of its contents and of her own rights in the premises, and without any opportunity being given her to inform herself as to her legal rights, or the effect of the instrument, and she prays that the contract may be canceled, or, if the contract shall be determined to be valid, that her right to occupy the homestead be established by the judgment.

The district court determined that the contract was valid and binding on the defendant, and that by it she had relinquished all dower right or right of inheritance in the estate, but that she was not divested of the right to occupy the home-

stead; and judgment was entered accordingly. Plaintiffs appeal.

*Hall & Huston,* for appellants.

*J. T. Illick* and *J. C. Powers,* for appellee.

REED, J.—I. The first question which we are required to determine is one of practice. The appellee filed an additional

1. PRACTICE in supreme court: supplemental abstract to present the record as corrected, after appeal, in the court below.

abstract, in which it is denied that the ante-nuptial contract, or any copy of it, was attached to plaintiffs' petition as an exhibit, or at any time made a part of the pleadings or records of the case in the district court, or that it was offered or introduced in evidence on the trial; and it is claimed by appellee that it does not appear by the record, either that the execution of the contract was admitted in the pleadings, or that its execution or conditions were proved on the trial, and that, in the absence of the contract, we cannot consider or determine any of the questions arising in this case on its merits. If the case had been finally submitted on the abstract originally filed by appellant and the additional abstract filed by appellee, this position would undoubtedly be correct. But, after the additional abstract was filed by appellee, appellants suggested a diminution of the record, and had leave to amend the same. After obtaining this leave, they appeared in the district court and filed a motion to correct the record and minutes of the evidence taken on the trial. Defendant's counsel appeared to this motion, and, upon a hearing, the motion was sustained, and it was ordered that the record and minutes of the evidence be so corrected as to show "that, on the trial of said cause, the plaintiff sought to find and introduce as evidence the original ante-nuptial contract referred to in the pleadings, but, the same being mislaid and not being produced at the time, a copy of said ante-nuptial contract was found and produced by plaintiffs' attorney, and the counsel for defendant consented that said copy might be used instead of the ori-

ginal; that, by mistake or inadvertence, this consent was not noted by the short-hand reporter on his minutes; that, after all the evidence was concluded, the said copy of the ante-nuptial contract was read to the court as part of the evidence, the counsel on both sides discussed and considered said contract, and what was its proper construction, and that, when the case was submitted, the court took said copy and considered it as part of the evidence in the case, and the same was incorporated in full in the decree of the court, as shown by the record."

At the next term of this court, after this order was made in the district court, appellants filed an amended and supplemental abstract containing these proceedings; also, the judgment or decree of the district court, in which is incorporated what purports to be said ante-nuptial contract in full. Appellee now contends that we cannot consider this supplemental abstract; that appellant, having averred that the original abstract was correct, and having filed the certificate of the judge who tried the case, and of the short-hand reporter, to its correctness, cannot now be heard to assert the contrary. The original abstract shows that the evidence introduced on the trial was taken down by the official short-hand reporter of the court, and that his minutes or notes were at once filed with the clerk."

The statute, section 3777, McClain's Code, makes these notes, when thus filed with the clerk, part of the record of the case, and we know of no reason why this record may not be amended or corrected by the court that made it, when it is ascertained in a proper proceeding that it does not fully or correctly embody the action or proceeding of which it was intended to be the record. It has been frequently held, it is true, that it is not competent to contradict the recitals in the bill of exceptions by affidavit, or by the certificate of the judge, as in *Pearson v. Maxfield*, 47 Iowa, 135, cited by appellee, and in *Dedric v. Hopson*, 62 Id., 562. But the difference between the holding in those cases and the question

here presented is very apparent. There the offer was to
contradict the recitals of the record by affidavit, or by the
certificate of the judge. Here an additional record is pre-
sented, so amended and corrected by the proper court as that
it embodies the action and proceedings which was had upon
the trial. We think, therefore, that this supplemental abstract
is properly before us as part of the record, and that the case
must be determined on its merits.

II. Coming, then, to the merits of the case, the first ques-
tion to be determined is whether this is a valid contract. It
is not claimed by appellee that contracts of this

2. ANTE-NUP-
TIAL con-
tract: fraud
in procuring
facts not con-
stituting.

character are not recognized by the law, or that
they are not enforceable when they have been
fairly entered into; but her claim is that, when
she signed this contract, she did not know what rights or in-
terest she would acquire by the marriage in the estate of her
husband, and that she did not understand the force or effect
of the instrument she signed. It is true that a court of equity
will not enforce the specific performance of a contract against
one who entered into the contract in ignorance of his rights
as to any material matter involved in it; and this is specially
true, if any undue advantage has been taken of his ignorance
in this respect.

In this case, howerer, we are not satisfied by the evidence
that appellee was ignorant of her rights when she signed the
contract, or that any advantage was taken of her. The evi-
dence shows that William Mahaffy was about sixty-nine years
old when this contract was entered into; that he was an ordi-
narily well-to-do farmer, living on his farm, but having it
cultivated either by hired help or by tenants; and that, for a
number of years, he had been unable to do much work, being
in delicate health and suffering from some disease of the
heart. Appellee at this time was about thirty-three years old,
and had been living for some time in Mahaffy's family as a
domestic. She was almost illiterate; was poor and depended
on her own earnings for support, having neither home nor

property, so far as the evidence discloses. On the day on which the contract was entered into, the parties went from Mahaffy's farm to the city of Burlington, where they called at the office of the lawyer who prepared the contract. Previous to this, Mahaffy had consulted this same attorney on the question whether a contract could be entered into between parties contemplating marriage, which would secure to the wife, after the death of the husband, a provision different from the interest which she would take in his estate under the statute, and he had been advised that such a contract would be valid. While in the office, and before the contract was signed, a controversy arose as to the amount of the provision which should be made for appellee by the contract, and she insisted that Mahaffy had agreed that the amount should be one thousand dollars, while he claimed that six hundred dollars was all he could afford to pay her. She also made the objection that Mahaffy's children might not be disposed to pay her the amount after his death, and the attorney advised her that the contract could be so drawn as that the amount would be a charge on the property of Mahaffy's estate after his death, and that this would afford her ample security. And this controversy and negotiation resulted in an agreement on six hundred dollars as the amount which should be paid her, and in embodying in the contract a provision which makes the amount a charge on all the property of the estate. The attorney also testifies that, before the contract was signed, he fully explained to both the parties its terms and effect. The parties then signed the contract, and afterwards, on the same day, were married.

We are well satisfied that the marriage was one of convenience rather than affection. Appellee, doubtless, entertained a feeling of respect for the man she married, but we are convinced that she was induced to enter into the relation by a consideration of the pecuniary advantages which she would gain by the marriage, rather than by any of the tender emotions that ordinarily influence women to enter into that

relation. We are satisfied, too, that these pecuniary consider-
ations had been the subject of negotiations and discussions
between the parties before they went to Burlington on the day
of the marriage. The act of Mahaffy in seeking advice on
the subject, and the conversation between the parties at the
attorney's office before the contract was signed, and the state-
ments of appellee at that time, all clearly indicate that this
is so. Her conduct in insisting that she should have some
security that the amount agreed upon should be paid her after
the death of Mahaffy, and that the matter of the payment
should not be left to the mere option of his children, shows
that she was a woman of some business prudence, and this,
with the evidence of the attorney that he read and explained
the effect of the instrument to her, satisfies us that she did
not enter into the contract in ignorance, either of her rights,
or of the effect of her act in signing the instrument; so that
we consider that the contract is valid, and ought to be en-
forced.

III. The question which is in dispute between the parties
with reference to the construction of the contract is, whether

3. ——: con-
struction of:
"rights of
dower and in-
heritance"
does not in-
clude home-
stead: effect
of "sweeping
clause."

by its terms the defendant relinquished the right
to "occupy and possess the homestead" after the
death of the husband. Omitting those portions
of the instrument which are merely formal, the
language of the contract is as follows:

"These parties, in view of an intended marriage, and pre-
vious to the consummation of that relation, and to settle the
rights of each in regard to the property of the other, do now
make and enter into this contract and agreement:

" In consideration of the agreements and stipulations here-
inafter set forth on the part of the party of the second part,
I, Wm. Mahaffy, party of the first part, do hereby agree and
bind myself, my heirs and administrators, that, after my death,
there shall be paid to the said Elizabeth Hutchinson, as my
widow, the sum of six hundred dollars, with interest thereon
at the rate of six per cent from the date of my decease until

paid, and I hereby charge the payment of the same upon any and all of my said estate that I may leave, both personal and real, the same to be her dower and portion in full of my said estate, and in lieu and stead of any dower or rights of inheritance therein, given or created by operation of law.

" And I, Elizabeth Hutchinson, party of the second part, and in contemplation of the marriage aforesaid, with its rights and responsibilities, and in consideration of the payment of the said sum of six hundred dollars, and six per cent interest thereon from the decease of the party of the first part until paid, hereby agree and bind myself to receive and accept the said sum in full payment, and in entire and complete satisfaction of all my rights of dower and inheritance as the widow and heir of the party of the first part in his said estate, both real and personal, and I hereby now renounce and relinquish all claim, right, title and interest therein by reason of the said relation of wife or widow of the said Mahaffy."

The covenant of Mahaffy, as expressed in the language immediately following the preamble, is, "that, after my death, there shall be paid out of my estate, to said Elizabeth Hutchinson, as my widow, the sum of six hundred dollars, * * * the same to be her dower and portion in full of my said estate, and in lieu and stead of any dower or rights of inheritance therein, given and created by operation of law." And this is followed by an agreement on the part of said Elizabeth Hutchinson "to receive and accept the said sum in full payment, and in entire and complete satisfaction, of all my rights of dower and inheritance as the widow and heir of the party of the first part in his said estate." These provisions of the contract relate, beyond doubt, to the distributive share which she would have taken under the statutes of the state in his estate, and by them she is bound to accept said sum of money in satisfaction of her right of inheritance in the estate. But this, we think, is the extent of these provisions.

The right of the wife to continue in possession and occupancy of the homestead, after the death of the husband, is

not a right or interest in his estate which she takes by inheritance, but is entirely distinct from the interests which she takes by virtue of that right.    It is a mere personal right to occupy and possess the premises, but is unaccompanied by any title or property interest therein.    It does not accrue with the death of the husband, nor is it enlarged or otherwise affected by that event.    She had the right to the same extent during his life, and the statute (section 2007 of the Code) simply continues it after his death.

We think, then, that defendant did not relinquish her right to occupy and possess the homestead by the provisions of the contract last quoted.    But her agreement to accept the six hundred dollars in satisfaction of her right of dower and inheritance is followed immediately by the following language: "and I hereby now renounce and relinquish all claim, right, title and interest therein by reason of the said relation of wife or widow of the said Mahaffy." And appellants contend that, by this provision of the contract, defendant relinquished her right to continue to occupy the homestead—the claim being that this clause has the effect to enlarge the contract as expressed by the preceding covenants, and that, by these general terms, the parties intended to include and divest every right, title and interest which defendant would have taken, by virtue of the marriage, in the estate of Mahaffy.

We had occasion, in another case between these parties, to construe this provision of the contract. 61 Iowa, 679.    In that case we held that this clause did not have the effect to enlarge the contract, but that the general terms therein were used with reference to the rights and interests mentioned in the preceding clause, and that this clause was added to complete and render more certainly effective those which preceded it.   Appellant's counsel, in their argument in this case, have attacked this construction with a good deal of vigor. They claim that the word "therein," as used in this clause, relates to the terms "his said estate" in the preceding clause, and that, to apply it to the interest and right in said estate,

which defendant relinquished, as we did in the other case; does violence to the English language. It is possibly true that our interpretation of this clause is not the one which would be put upon it if it were construed solely with reference to the rules of English grammar; but we do not stop to consider that question. Contracts are often written with such small regard to these rules that they cannot be allowed in all cases to control in their interpretation—and in many cases the rules of grammar constitute but one among many matters which the court must consider in arriving at the intention which the parties have expressed in the written instrument. The clause in question ought, we think, to be construed with reference to the clauses which precede it; and the sense in which the words are used is also to be determined very largely by those preceding clauses. The language used in that portion of the contract which contains the covenant of William Mahaffy shows unmistakably, we think, that the benefit or advantage for which he was contracting was the relinquishment by defendant of the right to take any interest in his estate by inheritance, and the sum of money which he agreed should be paid her out of his estate was to be paid solely as consideration for such relinquishment by her. There is nothing in the language of his covenant, nor in her agreement to accept the money in satisfaction of her right of dower or inheritance, which by any possible construction can be made to cover or include any other right or interests in the estate, except the one named in express terms by each of the parties. The parties have, then, by unmistakable language, indicated the subject matter of the contract. They have identified the particular right or interest in the estate which was the subject of their agreement. And this is followed by the general terms of the clause in question. The general language of this clause must be held to relate to rights and interests of the same nature and description with those that have been already mentioned. The clause is in the nature of a "sweeping clause," and its aim and object was to guard against accidental omis-

.sions; and the rule of construction in such case is that the "general words are restrained by the subject matter." Broom's Legal Maxims, 399; *Moore v. Magrath*, 1 Cowp., 9; *Van Hagan v. Van Renssalaer*, 18 Johns., 421; *Rich v. Lord*, 18 ·Pick., 322. Our interpretation of the clause is in accord with this rule of construction, and we are content to adhere to it.

IV. While the cause was pending in the district court, Margaret Hawthorn, one of the plaintiffs, died intestate and

**4. PRACTICE in supreme court; judgment not appealed from not considered.** without issue, leaving her husband, John Hawthorn, surviving her. By an amendment to the petition, said John Hawthorn was made a party plaintiff, and united with the other plaintiffs in ·the original petition.

Defendant answered the amendment to the petition, admitting the death of said Margaret, and claiming that she was heir ·to one sixth of the interest of said Margaret in the real estate of which William Mahaffy died seized, and praying that she be awarded the interest by the final judgment in the case. The judgment of the district court contains no special reference to this claim, but it in general terms quiets plaintiff's title to said real estate against any and all claims and demands of defendant, except as to her right of homestead. We think ·that defendant's answer to the amendment to the petition, in so far as it demands any relief as to the estate of Margaret ·Hawthorn, is in the nature of a cross petition in equity, and, as the judgment of the district court is an adjudication of her claim in that respect, it is a judgment against her, and can be reviewed in this court only on an appeal by her, and, as she has not appealed, we will not enter into the question whether she took any interest in the estate of said Margaret Hawthorn. The judgment of the district court is

AFFIRMED.