AUGUST H. W. RUEBER, Appellee, v. FRANK NEGLES, Appellant.

**Contracts:** ORAL MODIFICATION: EVIDENCE: STATUTE OF FRAUDS. The
1 statute of frauds does not forbid an oral contract or proof of the same, it only forbids oral evidence of a contract which is within its provisions. So that where the plaintiff pleads an oral modification of a written contract concerning which no material issue is raised by the answer, and the real question presented is, which of the parties breached the oral contract, the statute of frauds has no application.

**Same.** An oral contract for the sale of crops not in existence is valid and provable by parol, and any subsequent modification may be so proven.

**Verdict:** INADEQUACY: CORRECTION BY THE COURT: NEW TRIAL. Where the jury is instructed to return a verdict for plaintiff in a specified sum, or nothing, but the verdict is in fact rendered for a less sum than directed, the court has authority simply to set the verdict aside subject to the condition that defendant submit to the larger verdict or to a new trial; a verdict for a less sum than that authorized can not be corrected by the court arbitrarily.

**Same:** NEW TRIAL. Where there is evidence to sustain the verdict in the amount rendered the fact that a larger verdict might have been found under the evidence is not ground for a new trial.

**Same:** APPEAL: ENTRY OF JUDGMENT. Where there was no error entitling defendant to a new trial the action of the court in increasing the amount of the verdict will not authorize a new trial, but the appellate court may remand the case with direction to enter judgment on the verdict as returned by the jury, the appellee not asking for a new trial.

*Appeal from Ida District Court.*—Hon. F. M. Powers, Judge.

Thursday, June 16, 1910.

Action for damages for breach of contract. There was a verdict for the plaintiff for $133.50. On motion of the plaintiff, the trial court raised the verdict to $749 and entered judgment for such amount on the theory that the plaintiff was entitled to recover such sum or nothing. The defendant moved for a new trial which motion was overruled. The defendant appeals. *Reversed and remanded.*

*Johnston Bros.,* for appellant.

*W. A. Helsell,* for appellee.

Evans, J.—The original negotiations between the

parties resulted in a written contract entered into on April 13, 1905, as follows:

> Odebolt, Iowa, April 13, '05. This agreement made this day between Aug. H. W. Reuber, of Odebolt, Iowa, and Frank Negles, of Arthur, Iowa, witnesseth: That said Negles has sold his 1904 and 1905 crops of popcorn to said Reuber. Said Negles agrees to deliver his 1904 crop on or before September 15, 1905, in good marketable condition, shelled, at $1.20 per hundred pounds in elevator at Arthur, free from mould, in popping condition, and agrees to deliver his 1905 crop in good marketable condition any time after November 15, 1905, in crib at Odebolt unless crib can be secured at Arthur, in which case said Negles will deliver his popcorn at Arthur, Iowa. Said Reuber agrees to pay for crop of 1904 at rate of $1.20 per hundred pounds and seventy-five cents per hundred pounds for 1905 crop at time of delivery, and also agrees to pay said Negles as part payment in July, 1905, $300.00. [Signed] Frank Negles. Aug. H. W. Reuber.

At the time this contract was entered into, defendant's 1904 crop was in his crib and the 1905 crop was yet to be planted. On the 8th day of June, 1905, this contract was orally modified to the extent that, in lieu of $300 to be paid in July to Negles, the sum of $75 should be paid in June, and such sum was then and there paid and accepted on the 8th day of June. In August, 1905, the 1904 corn was delivered and paid for; the previous payment of $75 being applied on such purchase price. At that time further oral modification was agreed upon to the extent that the delivery of 1905 should be delayed until the summer of 1906. In November, 1905, this latter oral modification was further modified to this extent, that the defendant should then forthwith deliver about 22,000 pounds of corn in crib at Arthur, Iowa; this amount being a surplus for which the defendant had not sufficient crib room. This quantity was received by the plaintiff and paid for. Upon the delivery of this quantity of corn a further

oral modification was agreed upon between the parties to
this extent, that the 1905 corn to be delivered in the summer
of 1906 should be delivered shelled instead of on the cob
and in the crib, and that its price as shelled should be $1.25
per hundred, instead of $.75 per hundred on the cob.    To
this extent, there is no dispute between the parties as to
the terms of the modification.    Certain points of dispute
between them as to such terms will be noticed later on.    On
May 15, 1906, defendant notified the plaintiff that the corn
was in popping condition and he desired to shell and deliver
the same.    The plaintiff agreed to come out and examine it,
and he did come out and examine same on May 29th.    He
did not see defendant that day, the defendant being absent
on a trip; but he left word with the defendant's son that
he might deliver the corn.    The defendant returned home
·on June 15th, and on that day received through his son the
message from plaintiff.    Thereupon he went to plaintiff on
June 16th and offered to shell and deliver the corn forth-
with. . At this time the plaintiff was not willing to take an
immediate delivery of the corn on the alleged ground that it
was not in popping condition.    The final word of this day's
conversation, according to the defendant, was:  "I told him
if he didn't take the corn I will sell it to somebody else."
At this time the corn was worth on the market from $1.25
to $1.40 per hundred.    The defendant did thereupon enter
into some negotiations with another. dealer, but consum-
mated no contract.    On the 30th day of June, the plaintiff
made a formal demand for the corn which was refused by
the defendant.    The testimony of the plaintiff at this
point is ·that on this day the defendant first agreed to
comply with the demand and afterwards refused.    The
testimony of the defendant is that he did not on this day
agree to deliver, but immediately refused.    At or about this
time, the corn was worth $2.10 on the market.    On July
2d defendant sold to another his entire crop, consisting of
81,720 pounds, for $2.10 per hundred.

I. Appellant contends that the contract between the parties was one within the statute of frauds, and was therefore required to be in writing; that any alleged oral modification thereof converted it into a parol contract; and that no oral evidence was admissible in favor of plaintiff as a basis for affirmative relief. This point was urged in the form of objections to evidence offered on behalf of plaintiff, and the same question is presented here. On behalf of plaintiff, it is urged that the question thus argued by the defendant does not arise upon this record, and we think the plaintiff must be sustained in this contention. It is conceded and pleaded by both parties that there was an oral modification of such written contract. Each party sets out in his pleading the terms of the alleged oral modification. The defendant in his answer sets out such oral modification as follows:

*1. Contracts: oral modification: evidence: statute of frauds.*

Avers the facts to be that some time in August, 1905, by mutual consent between the parties hereto, said written contract was abandoned and set aside, and it was then and there orally agreed by and between the parties hereto that plaintiff was to purchase of the defendant his 1905 crop of popcorn. That the same was to be delivered by this defendant at Arthur, Iowa (as soon as the same was in popping condition, for which the plaintiff was to pay defendant $1.25 per hundred pounds shelled corn. That in May, 1906, said corn being in popping condition, this defendant tendered the same to plaintiff, and plaintiff failed and refused to accept or to pay for the same. And again in June, 1906, this defendant again tendered said corn to the plaintiff, and this plaintiff refused to accept the same or to pay for the same.

These averments are precisely the same as the averments of the plaintiff in his petition, except that the plaintiff avers that the time of delivery in the summer of 1906 was to be at his option; whereas, the defendant avers that such delivery was to be made when the corn was in "pop-

ping condition." Under the evidence this difference in the pleadings has become quite immaterial. Under the undisputed testimony the plaintiff exercised his option, if any he had, on May 29th, and at that time directed a delivery. The only difference in the testimony of the two parties at this point is that the plaintiff contends that he directed such delivery at that time provided the corn was, in good popping condition. He also testified as a witness that he ascertained from subsequent tests that it was not in good popping condition. The contention of the defendant as a witness was that it was in good popping condition at that time. After May 29th, therefore, the issue between the parties was confessedly narrowed down to the question whether the corn was in popping condition. If it was, the defendant had a right to deliver the same forthwith according to the terms of the oral contract as he claimed it, and he had the same right to deliver it according to the terms of plaintiff's direction in the exercise of his alleged option on May 29th, as testified to by the plaintiff.

Our statute of frauds is a statute of evidence. It does not forbid an oral contract nor render an alleged oral contract void or invalid. It only forbids oral evidence of a contract which is within its provisions. It permits the plaintiff to call his adversary as a witness and to establish the alleged contract by his oral evidence if he can. In this case the pleading of the defendant made no issue as to the terms of the oral modification pleaded except at one point already indicated and which we hold to be immaterial. The vital issue made by the parties under their pleadings was: Which of them was guilty of breaching the contract? Oral evidence on this question is not covered by the statute of frauds. The evidence on behalf of defendant tended to show that the plaintiff was himself guilty of a breach of the contract by his verbal refusal on June 16th to receive an immediate delivery. If the plaintiff was justified in this refusal, then the evidence

of the defendant tended to show a breach of the contract on his own part on that date in his announcement of purpose to sell to another because of the plaintiff's refusal. Substantially the only issue submitted to the jury by the trial court was the question of which party was guilty of the breach, although the attention of the jury was not directed on this question to the particular date, June 16th.

Defendant requested the following instruction (No. 5): "If you find that defendant has established, by a preponderance of the evidence, that the contract in controversy was as claimed by defendant, to wit, that the corn should be accepted by the plaintiff as soon as the same was dry and in popping condition, and you should further find that said corn was dry and in popping condition on the 16th day of June, 1906, and that the defendant tendered the corn to plaintiff and he refused to accept the same, then you are told, as a matter of law, that the plaintiff can not recover and your verdict must be for the defendant." And this was given by the court in substance under the same number.

There is the further consideration that there were four successive oral modifications and that performance or part performance was had in pursuance of the first three. If by reason of these oral modifications the contract between the parties became parol as a

2. SAME.

matter of law, then it became such parol contract on June 8, 1905. At that time the crop of 1905 was not in existence, and an oral contract with reference thereto was valid and provable by oral evidence according to section 4626 of the Code. We do not see how the subsequent modifications could change the contract in respect to the parol character thus acquired on June 8th, nor change the relation which it sustained to the statute of frauds.

Without passing at all, therefore, nor intimating any opinion as to the legal merits of the point here raised by appellant, we are well satisfied that the argument is not available to him upon this record.

II.   As already indicated, the verdict was for $133.50.
The plaintiff filed a motion that the verdict be "corrected,"
and that $749 be inserted as the amount thereof, in lieu
of the amount inserted by the jury.   This
motion the court sustained and in form cor-
rected the verdict and entered a judgment for
$749.   This was done manifestly upon the
theory that, if the jury found for the plaintiff at all, it
could not be for less than the larger sum named.   In so
changing the verdict, the trial court manifestly erred.   If
it were true on the record that the verdict should have been
for $749 or nothing, even then the trial court would be
warranted only in setting aside the verdict and granting a
new trial.   It is argued by appellee at this point that the
trial court would have been justified in instructing the jury
that. if they found for the plaintiff, it must be for $749
and no less, and that if, in the face of such instruction,
the jury had rendered a verdict for $133.50, such verdict
would be in plain disregard of the instructions, and the
court would therefore be justified in ignoring the lesser
sum found by the jury, and inserting the larger amount
stated in the instructions.   The argument is not supported
by our previous decisions, nor is it sound in principle.
Even if the court had instructed the jury to return a verdict
for plaintiff for $749 or nothing, and if the verdict actually
returned by the jury for $133.50 had been rendered in the
face of such instruction, even then the court could only set
the verdict aside, except that it might impose a condition
upon the defendant that he submit to the larger judgment
or submit to a new trial.   This is the utmost extent to
which we have ever gone in such cases.   It is argued that
a finding in favor of the plaintiff for any sum is equivalent
to a special finding that he was entitled to recover, and
that, where the amount of his recovery was a mere matter
of computation under the law, the court might state such
amount in its instructions; and, if so, that it might equally

3. VERDICT:
inadequacy:
correction by
the court:
new trial.

insert the amount in the verdict after its return if the jury ignored such instruction. But if a jury were instructed to return a verdict for $749 or nothing, and if in the face of such instructions it returned a verdict for $133.50, it could as well be argued that the refusal of a jury to allow $749 was equivalent to a special finding that he was not. entitled to recovery at all. So that a verdict for the plaintiff for a less amount than was warranted under the instructions might furnish ground to either party to ask that it be set aside.

III. There is the further reason why the action of the trial court was erroneous. It is manifest that the court proceeded upon the assumption that the only evidence in 4. SAME: new trial. the record tending to show a breach of the contract related to June 30, 1906. It is contended for defendant that there was evidence in the record tending to show such breach on June 16, 1906, and we think this contention must be sustained. It is true the defendant contends that the breach on June 16th was on the part of the plaintiff, and it may be that the preponderance of the evidence is to that effect. If the jury should find, however, that the plaintiff was justified in his refusal of June 16th, then the evidence did tend to show a breach then and there on the part of the defendant. The trial court instructed the jury that the measure of damages was the difference between the contract price and the market price on the date of the breach. Applying this instruction to June 16th and the state of the market on that date, the verdict was in exact accord with that instruction and the evidence.

We think, therefore, that there was evidence to sustain the verdict in the amount rendered, and that in this respect the verdict furnished no ground for a new trial to either party. For this error in entering judgment for a larger amount than the verdict, the case must be reversed and remanded.

The appellant asks that, if the case be reversed upon this ground, we remand it for a new trial. This demand is resisted by the appellee as we understand his argument. In any event, the appellee did not ask for a new trial in the court below, nor does he ask here that the case be remanded for a new trial if reversed on this ground. We find no error in the record entitling the defendant to a new trial. It will be ordered, therefore, that the judgment below be reversed, and that the case be remanded, with directions to the trial court to enter judgment on the verdict as rendered by the jury for $133.50 with 6 percent interest thereon from the date of the verdict. *Reversed* and *remanded.*

5. SAME:
appeal: entry
of judgment.