Myrtle McMinimee, Appellee, v. Waldo McMinimee, Administrator, et al., Appellants.

No. 47033.

L. V. Gilchrist, of Denison, for appellants.

L. W. Powers, of Denison, for appellee.

Smith, J.—Plaintiff and A. C. McMinimee were married November 14, 1943. He died March 8, 1946. Each had been previously married, had children, and owned substantial property. Decedent's first wife, mother of defendants, appellants herein, died April 6, 1943; plaintiff's first husband, March 25, 1931.

It is conceded by all that there was an oral antenuptial contract between the parties by the terms of which each made some renunciation of rights in the property of the other. Defendants claim it was absolute as to all property of each. Plaintiff contends that in event of Mr. McMinimee's death she was to have the right to occupy the homestead as long as she lives, and ownership of the contents of the home, consisting of furniture, household equipment, and wearing apparel.

Approximately two months after their marriage the parties executed an instrument which recited the making of an oral antenuptial contract whereby each had agreed, in event of the other's death, to waive and relinquish (as surviving spouse), "all right in and to the property" of the other. This written instrument referred to the consummation of the subsequent marriage and (ironically, in view of the present litigation) expressed a desire "to confirm and put in writing said agreement so that no further difficulties or questions might ever arise about the true agreement made between the parties hereto prior to the time of said marriage." Whether there had already arisen "difficulties or questions" does not otherwise appear.

This instrument made no exception in plaintiff's favor as to homestead rights or as to ownership of the contents of the home. Plaintiff prays that she nevertheless be decreed to have such rights and ownership, and alternately, that if necessary, "said prenuptial agreement" (presumably the written instrument evidencing it) be reformed for that purpose. Defendants, by appropriate pleadings, joined issue on both propositions. The trial court held the instrument as drawn would preclude plaintiff from claiming such rights but decreed reformation. The defendants appeal.

I. Assuming (but not deciding, as the point is not raised here) that equity has power to reform such an evidentiary instrument as we have described, we first inquire into the sufficiency of the evidence to support the decree.

The quantum and character of proof necessary to justify reformation has been variously described in Iowa decisions as "clear and satisfactory," "clear, full, and decisive," "clear, convincing, and satisfactory," "clear, convincing, satisfactory, and free from doubt," "more than mere preponderance," "beyond a reasonable doubt," etc. Citation of the various cases is unnecessary. See 16 Iowa Digest 559 et seq.

We have here, as bearing on the issue of reformation, the testimony of plaintiff, of the attorney who drew the instrument, and of another witness who testified as to declarations of Mr. McMinimee; also some slight evidence as to the possible financial situation of the parties.

Plaintiff first consulted the attorney alone. She testified, over appropriate objection, to the terms of the oral agreement and what she told the attorney to put into the proposed writing. Clearly, she was incompetent to testify directly or indirectly to the transaction wherein the oral contract was made. While her evidence, so far as pertinent and material, was admissible to prove the transaction between her and the attorney, it could not be used to prove the transaction between her and decedent.

Later the husband and wife went to the attorney's office and signed the instrument the latter had in the meantime drawn. The testimony of the attorney is far from clear or satisfactory. It does not differentiate between what was dis-

cussed on the first visit and what was later said by decedent or in his presence. It is not clear whether the discussion as to homestead right and ownership of the contents of the home related to the terms of the previous oral agreement or only to what the parties presently wanted incorporated into the writing.

The attorney testified:

"My best recollection was that each was, they were to have no rights in the property of the other. They both had children and I remember her discussing that part of it. She wanted her children to have her property and he wanted his to have his, and neither one wanted any part of the other. Now, with reference to the homestead, I can't remember exactly what was said about it. I do remember that the question of living in the home was discussed and my best recollection is that I was told to do, to include that in the contract, but I remember at the time when I was drawing this contract it troubled me as to whether it would be possible to make a contract after their marriage which would be valid, and I know it took some time and I finally ran across a couple of cases that said you could draw a valid contract confirming a contract made before marriage. At that time it is my recollection that I ran onto the homestead question and when they came to my office to sign it that question was put to me. I don't know whether they read the contract or not, I don't remember that at all, but I know that question was brought up and it is my recollection that I told them I thought under the law it wouldn't make any difference anyway. It was my understanding of the law that the widow would have the right to occupy the homestead under the terms of this contract and that was true of the exempt property in the home, it was discussed. That is all I can recall about it. I have ransacked my mind for weeks trying to remember all the details and looking for our notebooks and our files.

"The property in the home was discussed along with the right to occupy the homestead, that it wouldn't make any difference anyway, she would get it anyway."

On cross-examination:

"I certainly tried to draw this agreement as they wanted it * * * I don't think the right to occupy the homestead was thought of as being during the period of administration. I think * * * that they were concerned about the right to live there for the rest of her life. * * * I don't remember the details but it is my best recollection that I told them under this agreement she could occupy the homestead and that was based on my conception of the law as to the rights of the widow and not on any language in this instrument and that is my recollection as to the property in the home. I think the talk was when they were standing there, ready to hand it to them, and not after the instrument was signed."

We have omitted no material part of his testimony. He does not purport to state what was told him by Mr. McMinimee or in Mr. McMinimee's presence *as to the terms of the oral contract.* So far as his testimony reveals, there was no discussion of the oral contract at all but only of what was to go into the written instrument, "my best recollection is that I was told * * * to include that in the contract." Told by whom? Before there can be reformation a mutual mistake must be shown.

The only other testimony on the subject is that of plaintiff's sister-in-law (her first husband's sister), who said Mr. McMinimee told her (sometime after the marriage and before the written contract was executed):

"* * * that whatever was in the house in the shape of furniture was hers to do as she pleased and that the home was hers as long as she lived and then it was to revert to his children. * * * He told me it had all been arranged for that condition."

She also testified:

"At different times I would say to him I am glad she has such a comfortable home and for the future and he said I am too, and I intend it to be hers while she lives."

On cross-examination she added:

"I said to him at one time I hope you have arranged your affairs, both of you are not young any more and he said we have."

There is no evidence that connects any of this with the supposed terms of a previous oral contract—nothing inconsistent with what appears to have been supposed by all parties (including the attorney) to have been the legal situation under or in spite of the contract as revealed by the written instrument. Assuming that it would be admissible to prove the making of a valid postnuptial written contract, it had no probative value to establish the terms of the oral prenuptial contract.

Not much is shown of the situation of the parties at the time of the oral antenuptial agreement—surely, nothing tending to sustain plaintiff's contention. There is nothing as to their respective ages, health, or mode of living. The only clew to their relative financial condition indicates that her situation may have been slightly superior to his. Her first husband left a net estate in 1931 valued at $50,000 to $60,000. The exempt personal property set aside to her was appraised at $4,560. Some years later (1939) her son died and she was his sole heir to an interest in real estate estimated at $4,000, and personal property, the value of which is not shown.

Mr. McMinimee's estate was estimated at approximately $15,000 plus an interest in $3,900 of United States E bonds held jointly with grandchildren. It is true these figures may not accurately show the relative financial situation of the parties in November 1943, when they were married, but we have no further light on that subject. Perhaps the most that can be inferred is that they dealt on substantially even terms, though it appears plaintiff was the one later taking the initiative in getting the agreement reduced to writing. It is significant that in proceedings for fixing her widow's allowance in decedent's estate it was asserted (and not denied by her) that she owned "at least 154 acres of land * * * of the value of at least * * * $22,000.00 and * * * other property * * * of the value of at least $10,000.00 and that the income from her farm alone was at least $800.00 per year."

■■ We think the evidence as a whole is insufficient to furnish the high degree of proof necessary to sustain the decree of reformation on the ground of mutual mistake. The remedy sought here is of a character to require even closer scrutiny

than in the usual reformation suits, both because of the evidentiary and noncontractual nature of the instrument sought to be reformed and also because of the time of its execution. Plaintiff's ultimate reliance is, and of necessity must be, upon the alleged oral antenuptial contract. Such agreements, under the statute of frauds, can only be proved by written evidence. Section 622.32, Iowa Code, 1946; Battin v. Merchants State Bank, 202 Iowa 976, 208 N. W. 343; Frazer v. Andrews, 134 Iowa 621, 112 N. W. 92, 11 L. R. A., N. S., 593, 13 Ann. Cas. 556.

The statute does not forbid oral contracts or render them invalid. But it renders oral evidence incompetent to prove them. See Rueber v. Negles, 147 Iowa 734, 739, 126 N. W. 966; Battin v. Merchants State Bank, supra, 202 Iowa 976, 979, 208 N. W. 343. The evidence must all be furnished by the writings. American Oak Leather Co. v. Porter Brothers & Hackworth, 94 Iowa 117, 120, 62 N. W. 658; Frazer v. Andrews, supra, 134 Iowa 621, 628, 112 N. W. 92, 11 L. R. A., N. S., 593, 13 Ann. Cas. 556.

Plaintiff can avail herself of the written instrument (executed after marriage) only to prove the oral antenuptial contract. Because of section 597.2, Iowa Code, 1946, which forbids such contracts between husband and wife, the writing can have no validity *as a contract*. Its only service is to supply necessary *written* evidence of the otherwise unprovable prior oral agreement.

The attempt here, therefore, is to reform by oral testimony, not a written contract but an instrument that can only serve as a written memorandum or proof of an oral contract. We have held that an instrument of this kind must itself show that there was in fact a prior antenuptial contract and that oral evidence to supply an omission to state that fact in the writing is inadmissible. Battin v. Merchants State Bank, supra; Frazer v. Andrews, supra.

We have said:

"It is well settled, however, that in all such cases [where later writings are relied on to establish prior parol contracts] the court cannot look beyond the writing to ascertain the terms,

conditions, or provisions of the contract'' (citing cases). Allan v. Bemis, 120 Iowa 172, 180, 94 N. W. 560, 562.

And in Vaughn v. Smith & Co., 58 Iowa 553, 558, 12 N. W. 604, 606, we said:

''It must be remembered that the plaintiff is seeking to recover upon what he claims is a promise in writing to answer for the debt of another. Now he cannot aid or add to the promise by parol evidence. If he could, all the mischief intended to be guarded against by the statute of frauds would be accomplished.''

It is true none of these cited cases was a suit for reformation. But their language is pertinent here where an otherwise unenforceable oral contract is sought to be proved and enforced by reforming, upon parol evidence, the writing which is offered to make it enforceable. To permit this would, of course, be to use oral testimony to establish the antenuptial oral contract. We said in Snell v. S. S. Kresge Co., 220 Iowa 837, 839, 263 N. W. 493, 495: ''The very fundamental theory of the doctrine of reformation is that there must be a writing which is claimed to be the contract between the parties.''

As we have said, no issue seems to be made here as to the power to reform an evidentiary instrument of this kind. We need not pass on that question but it should be noted that one court has, in a well-considered opinion, held such power does not exist. See Friedman & Co. v. Newman, 255 N. Y. 340, 174 N. E. 703, 73 A. L. R. 95.

II. We have next to examine plaintiff's claim that despite the language of the written confirmation of the oral agreement she was not precluded from claiming the right to occupy the homestead for life and the ownership of its exempt contents. The trial court, citing Finn v. Grant, 224 Iowa 527, 278 N. W. 225, held she had no such right as the instrument made no reservation or exception of homestead and exemption rights from its operation.

Defendants argue that as plaintiff has not appealed from this holding she may not here question it even in support of the trial court's decree. This contention is not sound. See

Humphrey v. City of Des Moines, 236 Iowa 800, 803, 20 N. W. 2d 25; Wentland v. Stewart, 236 Iowa 258, 18 N. W. 2d 305.

Our statutes provide several kinds of homestead rights in favor of the survivor when a husband or wife dies. In chapter 636, Code, 1946, in Title XXXII, on Probate, there is provision for setting off the distributive share in real estate so as to include the homestead. Section 636.7. This contemplates, of course, that the survivor takes the title in fee. It is not involved here.

Section 561.12, in the Homestead chapter permits the survivor to "elect to retain the homestead for life in lieu of such [distributive] share in the real estate of the deceased." There is no mention of occupancy, and it would seem that under this statute the survivor takes a life estate. Finn v. Grant, supra, 224 Iowa 527, 534, 278 N. W. 225. Continued occupancy would be necessary to preserve the homestead exemption as against creditors of the survivor but not to retention of the life estate.

Section 561.11 creates a quite different right:

"Upon the death of either husband or wife, the survivor may continue to *possess* and *occupy* the whole homestead until it is *otherwise disposed of according to law* * * *." (Italics supplied.)

It is necessary to keep in mind the distinction between the *life estate* that may, under section 561.12, be acquired in lieu of or in exchange for the survivor's distributive share in real estate, and the mere right *"to possess and occupy,"* under the authority of section 561.11. Much of the conflict (some real and some apparent) in our decisions involving the effect of antenuptial contracts on homestead rights may be resolved by considering this distinction.

It is not entirely clear which section plaintiff claims under. She prays for a decree "establishing her right to *occupy* the homestead *as long as she lives."* (Italics supplied.)

The decree of reformation added to the written instrument similar language: "that nothing contained in this contract shall be construed as depriving the second party in the event

she survives the first party, *from occupying* the homestead *during her lifetime * * *.''* (Italics supplied.)

Neither the language of plaintiff's prayer nor of the trial court's decree is entirely consistent with either Code section. Neither describes a right ''to possess and occupy'' the homestead ''until it is otherwise disposed of according to law'' (provided for by section 561.11) or a life estate under section 561.12.

In Finn v. Grant, supra, 224 Iowa 527, 534, 278 N. W. 225, 229, the difference between these Code sections is inferred:

''Appellant Nels Quevli contends that notwithstanding the antenuptial agreement he had a right to continue to possess and occupy the whole homestead until it is otherwise disposed of by law, under the provisions of section 10145 of the Code of 1935 [now section 561.11, Code, 1946]. Under the antenuptial agreement, however, the appellant waived his right in the homestead property, and at Mrs. Quevli's death he had no dower interest or distributive share to be set off. * * *

''The possession given to a spouse under section 10146 of the Code [now section 561.12, Code, 1946] is a life estate in lieu of a distributive share, but as the spouse in this case had no distributive share, it naturally follows that he could not have the right to occupy the same for life.

''It may also be said that almost immediately after the death of his wife, Mr. Quevli leased the property in question under his assumed ownership thereof to others. Therefore, if he had any right to the possession of the property as a homestead, it was abandoned through its rental by him to others.''

On page 532 of 224 Iowa, page 228 of 278 N. W., the opinion had already stated:

''An [antenuptial] agreement of this kind is valid and operates to extinguish the homestead right of either in the property of the other. Weis v. Bach, 146 Iowa 320, 125 N. W. 211; In re Devoe's Estate, 113 Iowa 4, 84 N. W. 923; Fisher v. Koontz, 110 Iowa 498, 80 N. W. 551; Weismann v. Weismann, 150 Iowa 307, 130 N. W. 155; In re Estate of Thorman, 162 Iowa 316, 144 N. W. 5; In re Estate of Adams, 161 Iowa 88,

140 N. W. 872; Kroell v. Kroell, 219 Ill. 105, 76 N. E. 63, 4 Ann. Cas. 801; In re Estate of Shepherd, 220 Iowa 12, 261 N. W. 35.''

The subsequent language, however (previously quoted), shows clearly that there was involved in the Finn v. Grant case only the *life estate in lieu of distributive share,* which we held could not be claimed since the distributive share had been waived by the contract and was not available for exchange. The ''right to possess and occupy'' had already been waived by abandonment. Of the Iowa cases cited, some clearly referred to the life estate to be obtained in lieu of distributive share. Weis v. Bach, 146 Iowa 320, 125 N. W. 211; In re Estate of Thorman, 162 Iowa 316, 144 N. W. 5; and In re Estate of Adams, 161 Iowa 88, 140 N. W. 872. The others had no special bearing on the homestead question with which the case was concerned.

Plaintiff's contention that the written agreement did not waive her right to the life use of the homestead is based on the language of certain decisions, commencing with Mahaffy v. Mahaffy, 63 Iowa 55, 63, 64, 18 N. W. 685, 689:

''The right of the wife to continue in possession and occupancy of the homestead, after the death of the husband, is not a right or interest in his estate which she takes by inheritance, but is entirely distinct from the interests which she takes by virtue of that right. *It is a mere personal right to occupy and possess the premises, but is unaccompanied by any title or property interest therein.* It does not accrue with the death of the husband, nor is it enlarged or otherwise affected by that event. She had the right to the same extent during his life, and the statute (section 2007 of the Code) simply continues it after his death.'' (Italics supplied.)

The cited Code section (2007) referred to the Code of 1873, and so far as pertinent here was identical with our present section 561.11. What is now our section 561.12 was then section 2008.

What is said in the Mahaffy case, therefore, means that the right to possess and occupy until otherwise disposed of accord-

ing to law is a mere personal right "unaccompanied by any title or property interest"; and that an antenuptial contract by which the survivor agreed to "renounce and relinquish all claim, right, title and interest" in decedent's estate did not affect it.

In Fraizer v. Fraizer, 201 Iowa 1311, 1315, 207 N. W. 772, 774, the opinion was clearly discussing the right of occupancy under section 2985, Code, 1897, same as the present section 561.11. We said:

"Unless the antenuptial contract had the legal effect of depriving her of this statutory right, then she was not charge-. able with rental for such occupation. In In re Estate of Johnson, 154 Iowa 118, we held that an antenuptial contract may not supplant the power of the court, under the statute, to award to the widow a year's support. See, also, In re Estate of Uker, 154 Iowa 428.

"That the same rule should be applied to the statutory right of the widow to the temporary occupancy of the homestead is indicated in In re Estate of Adams, 161 Iowa 88. These statutory provisions are deemed to be in the interest of the family, and to involve a public policy."

Our conclusion here is that the antenuptial contract as represented by the postnuptial written instrument did not preclude the survivor from claiming her right of occupancy under Code section 561.11. This right of occupancy is not properly described as being "for her lifetime." It is to endure only until the homestead "is otherwise disposed of according to law."

Abandonment by or the death of the survivor would, of course, terminate it. The section itself provides a method of termination and Code section 561.12 indicates other possibilities. The phrase "until it is otherwise disposed of according to law" is discussed in In re Estate of Gardner, 122 Okla. 26, 30, 250 P. 490, 492 et seq; Fore v. Fore, 2 N. D. 260, 50 N. W. 712. See, also, Butterfield v. Wicks, 44 Iowa 310, 312; Nicholas v. Purczell, 21 Iowa 265, 89 Am. Dec. 572.

The language of the decree should be modified to secure to plaintiff only her right to possess and occupy the homestead

under Code section 561.11 in accordance with the views we have expressed.

III. There remains the question of plaintiff's claimed ownership of the contents of the home. She pleads (1) that such ownership was actually provided for in the contract; (2) that her husband orally gave and transferred the property to her after marriage; and (3) that the property was exempt to her.

What we have already said practically disposes of contentions (1) and (2) on account of lack of admissible proof. But section 635.7, Code, 1946 (formerly section 11918, Code, 1939) provides that "all personal property which in his [the husband's] hands as the head of, a family would be exempt from execution, after being inventoried and appraised, shall be set apart to her as her property, and be exempt in her hands as in the hands of the decedent."

Because of this statute the question of exempt personal property is quite different from that of life use of the homestead in lieu of distributive share. It is closely analogous to the right of the widow to an appropriate allowance for a year's support, under section 635.12, Code, 1946 (section 11923, Code, 1939); In re Estate of Johnson, 154 Iowa 118, 134 N. W. 553, 37 L. R. A., N. S., 875; In re Estate of Uker, 154 Iowa 428, 134 N. W. 1061; In re Estate of Peet, 79 Iowa 185, 44 N. W. 354; or to the right to occupy the homestead until otherwise disposed of by law. Mahaffy v. Mahaffy, supra; Fraizer v. Fraizer, supra.

In In re Estate of Peet, supra, at page 188 of 79 Iowa, page 355 of 44 N. W., it is said:

"It must be understood that contracts designed to divest the wife of the benefits of the statutes in her favor, after the death of her husband, and especially a statute providing for a necessary support, immediately following such death, must not be of doubtful interpretation, but specific and certain as to such intent. In general, the provisions of the statute in this respect embrace interests, not alone personal to the wife, but to the children, and in a sense to the public, and a law thus designed is to be guarded with caution. In this case there are

 

no children to be affected, but in the approval of contracts, by which its provisions may be set aside, the general purpose and scope of the law is to be kept in view.''

 This language seems pertinent here. The statute is ⟶ for the protection of widows and children as a matter of public policy. Rights so created should not be permitted to be waived in advance, at least in the absence of clear intention. It is so held as to exemption rights as against creditors. In re Will of Grilk, 210 Iowa 587, 589, 231 N. W. 327. We think it should be the rule here.

 The record is not entirely clear as to whether all the personal property in the home (exclusive of the mirror specifically mentioned) is exempt property. The decree should be modified so as to give plaintiff only what is exempt.

As modified in the two particulars pointed out the decision will be affirmed.—Modified and affirmed.

OLIVER, C. J., and BLISS, HALE, MANTZ, and MULRONEY, JJ., concur.

HAYS and GARFIELD, JJ., dissent.

HAYS, J. (dissenting)—I am unable to agree with the majority opinion and therefore respectfully dissent.

Plaintiff-appellee is the surviving spouse of A. C. McMinimee, who died intestate. He is survived by children of a former marriage, who are defendants-appellants. Prior to the marriage of appellee and decedent they entered into an oral antenuptial agreement, which was reduced to writing after the marriage.

The agreement states that each has property and children by former marriages; that they desire that their marriage should not in any way change their then-existing legal rights, or the existing rights of their children in the real and personal property of each of them; and:

''Whereas * * * if the First Party [decedent] should survive the Second Party [plaintiff-appellee], the First Party should not as surviving husband make any claim to any part of the estate of which the Second Party might be seized and

possessed, and further agreed that in consideration of said marriage, he waived and relinquished all right in and to the property of which the Second Party might die seized * * * whether as surviving husband, heir at law or otherwise, and

"Whereas, it was further agreed * * * that if the Second Party should survive the First Party, the Second Party should not as surviving wife make any claim to any part of the estate of which the First Party might die seized or possessed, and the said Second Party in consideration of said marriage, expressly waived and relinquished all right in and to the property of which the First Party died seized * * *."

At the time of the marriage and at the time of the death of decedent he owned the property in question and had been and was occupying it as a homestead. Appellee, by a suit in equity, asks that the prenuptial contract be construed to give her the right to occupy the homestead property as long as she lives, and if not so construed, that the contract be reformed to express such right. The claim is made against the heirs of decedent, who are denying her such right under the contract.

The trial court held the contract denied her such right but reformed the same so as to allow it. This court, in Division I of the majority opinion, holds such reformation was error, and in this I concur. The opinion, in Division II, then construed the contract, as reduced to writing by the parties, to give her not the relief asked, which was to occupy the homestead as long as she lives, but the right to occupy the homestead until it is otherwise disposed of according to law. It is this holding that I am unable to agree with.

Whatever the right of the surviving spouse may be, the same is statutory. If the deceased spouse dies testate the survivor may accept the provisions in the will or reject the same and take dower (distributive share). Section 636.21. (All Code references are to the 1946 Code unless otherwise stated.) If decedent dies intestate the survivor is entitled to dower (distributive share) to the extent of one third of the real estate, generally speaking, section 636.5; which share may include the homestead, section 636.7. This dower may be set off at

any time after twenty days from the death of decedent and within ten years. Section 636.9.

Section 561.1 provides that the house used as a home by the owner may become the homestead and which, if there be no survivor, descends upon the death of the owner to his or her issue, according to the rules of descent, section 561.18. Section 561.12 provides that the survivor may *elect* to retain the homestead for life *in lieu* of the distributive share. Section 561.11 provides that the survivor *may continue to possess and occupy* the whole homestead until it is otherwise disposed of according to law, but the setting off of the distributive share in the real estate of the deceased is such a disposal. Section 636.27 provides that within six months after written notice to the survivor, given by any heir of a deceased intestate, the survivor may *elect* to take the distributive share or the right to occupy the homestead.

There is no question but that antenuptial contracts are recognized and given effect in this state. In the very recent case of In re Estate of Parish, 236 Iowa 822, 830, 20 N. W. 2d 32, 36, we said: "*Antenuptial contracts* are looked upon with favor by the law and *are to be liberally construed* to carry out the intentions of the parties." (Italics added.) Thus in construing this contract a liberal construction should be given to its terms.

There is no dispute but that, under the terms of the contract, appellee has waived and relinquished her distributive share and has consequently lost any rights she may have had under sections 636.5, 636.7 and 561.12. Section 636.27 does not give anything to the survivor but refers to the rights under section 561.12 and provides the heirs of the intestate with a means to force a termination of the rights granted under section 561.11. The majority opinion nullifies section 636.27 by holding that the right to a distributive share is waived but the rights under section 561.11 still exist in the survivor.

Appellee relies upon a line of cases starting with Mahaffy v. Mahaffy, 63 Iowa 55, 18 N. W. 685, and it is upon this case that the majority opinion rests. It says that the Mahaffy case announces the rule "that an antenuptial contract by which the survivor agreed to 'renounce and relinquish all claim, right,

title and interest' in decedent's estate did not affect it'' (right to occupy homestead under section 561.12). The opinion also quotes from the case to the effect that:

"The right of the wife to continue in possession and occupancy of the homestead * * * is not a right or interest in his estate which she takes by inheritance, but is entirely distinct from the interests which she takes by virtue of that right. It is a mere personal right to occupy and possess the premises, but is unaccompanied by any title or property interest therein. It does not accrue with the death of the husband, nor is it enlarged or otherwise affected by that event. She had the right to the same extent during his life, and the statute (section 2007 of the Code) simply continues it after his death." 63 Iowa, at page 63, 18 N. W., at page 689.

In my judgment the Mahaffy case simply holds that a relinquishment of "dower and inheritance" relinquishes merely that, nothing more. The court there clearly states that the sweeping clause by which the survivor agreed "to renounce and relinquish all claim, right, title and interest" therein, is limited by the prior specific renouncement of "dower and inheritance." In fact, at page 65 of 63 Iowa, page 690 of 18 N. W., it is said:

"There is nothing in the language of his covenant, nor in her agreement to accept the money in satisfaction of her right of dower or inheritance, which by any possible construction can be made to cover or include *any other right or interests in the estate,* except the one named in express terms by each of the parties. * * * They have identified the particular right or interest in the estate which was the subject of their agreement." (Italics added.)

The Mahaffy case clearly states that the right claimed is a "right or interest in the estate." I agree with the case when it says that the "right to occupy the homestead under section 561.12" is not gained by dower or inheritance. It is a right gained by virtue of section 561.12, just as dower is granted by section 636.5.

The majority opinion further states that the same rule applies to release of homestead rights as applies to the release of a widow's allowance under section 635.12. In support thereof is cited the case of In re Estate of Uker, 154 Iowa 428, 134 N. W. 1061. However at page 434 of 154 Iowa, page 1063 of 134 N. W., is clearly pointed out the reason for the allowance rule. We say there, "We have * * * held * * * that such a contract [antenuptial] does not necessarily bar the allowance for support * * * *The ground* [*therefor*] *is that public policy forbids interference with the discretion of the court* in such a case." (Italics added.) Under sections 636.21, 636.5, 636.7, 561.1, 561.18, 561.11, and 561.12 no discretion rests with the court but rights are granted to the survivor based on her exercise of discretion. There is no analogy between the two propositions.

There is another line of cases, not mentioned in the briefs or the majority opinion, which cast considerable light upon the intent and purpose of section 561.11. In the case of Wadle v. Boston Market Co., 195 Iowa 46, 48, 191 N. W. 528, 529, we said:

" 'The right to continue and occupy has its limitations, and ceases when the property is otherwise disposed of according to law; and it is so disposed of when the survivor elects to take a distributive share in the entire property of the deceased spouse.' [Voris v. West, 180 Iowa 138, 142, 162 N. W. 836, 837.] *The evident purpose of the legislature in enacting this statute was to provide that the surviving spouse should have a right to continue the occupancy of the whole homestead* * * * *until either the distributive share or the occupancy of the homestead for life had been determined upon by the survivor.*" (Italics added.)

And at page 50 of 195 Iowa, page 529 of 191 N. W.: "It frequently happens that the heirs * * * do not insist upon a settlement and division of an estate for some considerable time * * * and that during such period * * * the surviving spouse continues in possession of the homestead." In Crouse v. Crouse, 219 Iowa 736, 742, 259 N. W. 443, 446, we said: "It [section

561.11] has been called a temporary right * * * and is said to expire after a reasonable time."

It is not claimed that appellee has not waived her right to dower or distributive share, nor that she has rights under section 561.12. As early as the Mahaffy case, we said (at least inferentially) that occupancy of the homestead was a right or interest in the estate. The contract in question clearly states, "* * * the Second Party should not as surviving wife make any claim to any part of the estate of which the First Party might die seized * * * and relinquished all right in and to the property * * *."

Under the precise words of the contract, the rights under section 561.11 are relinquished. Furthermore, as stated in the Wadle case, supra, the purpose of the statute is to give the surviving spouse a reasonable time to elect between dower and homestead for life. Under the contract in question she has elected. She elected when the oral agreement, made in consideration of the impending marriage, was entered into. Having released her rights, not by a specific limitation to *dower or inheritance* but by a general and all-inclusive statement of "any claim to any part of the estate," she released not only under sections 561.12 and 636.5, as conceded by the majority opinion, but also under section 561.11. By so holding, the homestead, under section 561.18, descends immediately to the appellants the same as though decedent had died before the marriage was performed. The intent of the contracting parties, as expressed in the contract, "said parties desired that their said marriage should not in any way change their then existing legal rights, or *the existing rights of their children* and heirs in the real and personal property of each of them" is carried out. (Italics supplied.)

I would reverse the trial court and remand with directions to dismiss plaintiff-appellee's petition.

GARFIELD, J., joins in dissent.