JOHN J. KROELL, Admr.

*v.*

ELIZABETH KROELL.

*Opinion filed December 20, 1905.*

1. APPEALS AND ERRORS—*petition to set off widow's award is not an action ex contractu.* A petition for appointment of appraisers to set off a widow's award is not a proceeding in the nature of an action *ex contractu*, and the Supreme Court has jurisdiction of an appeal from a final judgment of the Appellate Court in the case even though the amount involved is unknown at the time.

2. SAME—*when judgment of Appellate Court is final.* A judgment of the Appellate Court is final which reverses a judgment of the circuit court dismissing a petition for the appointment of appraisers to set off a widow's award upon the ground that the widow had released her rights by an ante-nuptial contract, where the Appellate Court in its opinion holds that the widow's rights were not released by the contract and remands the cause for further proceedings not inconsistent with such opinion.

3. WIDOW'S AWARD—*elements essential to the right to widow's award.* The right to a widow's award, under the statute, depends upon the marriage, the continuance of the marriage relation until death and the survivorship of the wife.

4. SAME—*when widow's award is released by contract.* A contract executed jointly between husband and wife, whereby each party releases, quit-claims and conveys to the other all interest in the property of the other, both real and personal, renouncing forever all claims, in law and equity, of curtesy, dower, homestead, survivorship or otherwise, releases the right to the widow's award, and bars the same if there are no minor children of the decedent living with the widow.

5. SAME—*when contract releasing marital rights has sufficient consideration.* Marriage of the parties to an ante-nuptial contract, coupled with the mutual covenants of the parties waiving and releasing the rights of each in the property of the other, is sufficient consideration for the contract.

6. PUBLIC POLICY—*ante-nuptial contracts are not against public policy.* Husband and wife may, by ante-nuptial contract, determine for themselves what rights they may have, respectively, in their own and in each other's property during the marriage and what shall become of the property afterwards, and such contracts are not against public policy.

7. SAME—*rule against barring widow's award by contract if there is a minor child is not based on public policy.* The rule that where there is a minor child of the decedent living with the widow the latter's ante-nuptial contract releasing her marital rights will not be held to bar the right to claim the widow's award is not based upon considerations of public policy, but upon the fact that a minor child is jointly interested in the award.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Mason county; the Hon. T. N. MEHAN, Judge, presiding.

LYMAN LACEY, Jr., for plaintiff in error:

The contract in question rests upon a sufficient consideration. *Phelps* v. *Phelps,* 72 Ill. 545; *McGee* v. *McGee,* 91 id. 548; *Otis* v. *Spencer,* 102 id. 622; *Barth* v. *Lines,* 118 id. 374.

The doctrine of *ejusdem generis* is only one of many rules of construction employed to ascertain the intention of the contracting parties as expressed in the instrument sought to be construed, and is applied where it is the only method of ascertaining the meaning of the contract. If it appears from the whole instrument that the general term was not intended to apply to the special terms preceding, it will not control in the interpretation of the contract. 17 Am. & Eng. Ency. of Law, (2d ed.) 6, 25; *In re Swigert,* 119 Ill. 83; *Shirk* v. *People,* 121 id. 61; *Misch* v. *Russell,* 136 id. 22; *Ambler* v. *Whipple,* 139 id. 311; *County of Union* v. *Ussery,* 147 id. 204; *Webber* v. *Chicago,* 148 id. 313; *Gage* v. *Cameron,* 212 id. 146.

A general description following a specific enumeration of objects or things will be held to include such things that are of the same general character, kind, grade, description, nature or class as those specifically enumerated. *In re Swigert,* 119 Ill. 83; *Shirk* v. *People,* 121 id. 61; *Misch* v. *Russell,* 136 id. 22.

Ante-nuptial contracts are to be liberally construed to carry into effect the intention of the parties without regard

to the strictly technical meaning of the words used. 19 Am. & Eng. Ency. of Law, (2d ed.) 1240; *Phelps* v. *Phelps,* 72 Ill. 545.

The contract, in terms, is broad enough to and does include a release of the widow's award. *Brenner* v. *Gauch,* 85 Ill. 368; *Weaver* v. *Weaver,* 109 id. 225; *Edwards* v. *Martin,* 39 Ill. App. 145; *McMahill* v. *McMahill,* 113 Ill. 461; *Spencer* v. *Boardman,* 118 id. 553; *Cowdrey* v. *Hitchcock,* 103 id. 262.

HARDIN W. MASTERS, and THOMAS D. MASTERS, for defendant in error:

Section 74 of the Widow's Award act is to be construed as a public policy provision, intended for the maintenance of the widow for a designated period after the death of the husband. The right to receive the benefits flowing therefrom is not barred in the absence of specific language showing an intentional waiver. *Strawn* v. *Strawn,* 53 Ill. 263; *Phelps* v. *Phelps,* 72 id. 548; *Race* v. *Oldridge,* 90 id. 253; *McMahill* v. *McMahill,* 113 id. 167; Schouler on Executors, (3d ed.) sec. 453; *Sheldon* v. *Bliss,* 4 Seld. 31; *Pulling* v. *Durfee,* 85 Mich. 34.

Being a public policy provision, intended in its spirit for the support and comfort of the widow, nothing save an express and proper waiver is favored by the courts. *Christy* v. *Marmon,* 163 Ill. 227; *Taylor* v. *Taylor,* 144 id. 436.

In the construction of ante-nuptial agreements or marriage settlements the courts do not incline to broaden the scope of the terms therein employed nor do the courts favor the reading of waivers of peculiar rights into such contracts. The waiver must be an expressed one. *Pierce* v. *Pierce,* 71 N. Y. 154; 14 Am. & Eng. Ency. of Law, (1st ed.) 540.

An ante-nuptial contract must express or show adequate consideration to receive the sanction of the courts.

Under the terms of the contract nothing whatever moves from the husband to the wife. They bind themselves not to interfere with the property and rights of the other flowing

from the marriage. The language in this regard simply announces the law since the Married Woman's act. The consideration is inadequate. *Goff* v. *Rogers,* 71 Ind. 459.

Whilst existing marriage is a good consideration, a contemplated marriage is not. *Lloyd* v. *Fulton,* 91 U. S. 479.

Where there is a particular recital and general words, the general words are restricted to the particular recital. *Denn* v. *Wilford,* 8 D. & R. 449; *Jackson* v. *Stevens,* 16 Johns. 110; *Jackson* v. *Stackhouse,* 1 Cowd. 122; Bishop on Contracts, sec. 593; *Shirk* v. *People,* 121 Ill. 61; *People* v. *Railroad Co.* 119 id. 83.

General words are limited always to that thing or those things which were specially in contemplation of the parties at the time when the release was given. Pollock on Principles of Contracts, secs. 436-442; *Feldman* v. *Morrison,* 1 Ill. App. 460; *Gaddis* v. *Richland County,* 92 Ill. 124; *Clark* v. *Saskarth,* 8 Taunt. 431; *McDade* v. *People,* 29 Mich. 50; *Commonwealth* v. *Killian,* 109 Mass. 346.

The contract released nothing but dower. Homestead rights cannot be released except in the mode provided by the statute. Such rights as the contract released were rights and interest accruing *inter vivos* by virtue of the marriage, and not peculiar public policy provisions of the statute which accrue by operation of law upon the death of the husband. *Zachmann* v. *Zachmann,* 201 Ill. 393.

In all marriage settlement cases passed upon by our courts where the award was barred, either the expressions "widow's portion," "widow's award," "all rights in my estate," or "in lieu of all rights at my death," appeared, or else they were will cases where the widow accepted under the will, and an allowance would have defeated the provisions of the will. *Brenner* v. *Gauch,* 85 Ill. 368; *McMahill* v. *McMahill,* 105 id. 596; *Jordan* v. *Clark,* 81 id. 465; *Phelps* v. *Phelps,* 72 id. 545; *Spencer* v. *Boardman,* 118 id. 556; *Weaver* v. *Weaver,* 109 id. 226; *Mayrand* v. *Mayrand,* 194 id. 47; *Christy* v. *Marmon,* 163 id. 225.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Defendant in error, Elizabeth Kroell, filed in the county court of Mason county her petition for the appointment of appraisers to set off to her a widow's award out of the estate of her deceased husband, John Kroell, Sr. She annexed to her petition a copy of an ante-nuptial contract between herself and her said husband, which the county court held to be a good defense. The petition was dismissed and the petitioner appealed to the circuit court, where, by stipulation, all charges of fraud were eliminated and the cause was heard upon the question of law as to the sufficiency of the contract to release the award. The circuit court came to the same conclusion as the county court and dismissed the petition, and the petitioner appealed to the Appellate Court for the Third District. That court held that the petitioner did not, by the ante-nuptial contract, release her right to a widow's award, and reversed the judgment and remanded the cause for further proceedings not inconsistent with the opinion then filed. From the judgment of the Appellate Court the case has been brought here by writ of error sued out by John J. Kroell, administrator.

The ante-nuptial contract was executed on April 8, 1886, under the hands and seals of the parties and was acknowledged by them. Each of the parties had been married before. Each one had adult children of the former marriage, and each was possessed of property, both real and personal. The contract recited that they contemplated a marriage with each other, and being each seized in their own right of personal property and real estate, and being desirous that each one should hold his or her undivided property then in possession or which might thereafter be acquired, separate and apart, without molestation or interference of the other, the same as though no marriage relation existed, they agreed that each of the parties should have full and separate control

of his or her property, both real and personal, without mo-lestation from the other. The remainder of the contract was as follows:

"It is agreed by and between the said parties, that each one shall have full control of their own separate property, both real and personal, to lease, sell and dispose of the same and receive all moneys, rents, issues and profits thereof, without molestation from the other; that each one shall pay their own debts now contracted or that may be hereafter contracted, and in no case shall the one be held for the debts of the other in any manner whatever. Now, therefore, in consideration of the above agreements, and of the sum of one dollar to me in hand paid, I, the said John Kroell, Sr., do hereby release, convey and quit-claim to the said Elizabeth Crawford all interest I may acquire in and to all her prop-erty, both real, personal and mixed, now in possession or that she may hereafter acquire, renouncing forever all claims, in law and in equity, of courtesy, dower, homestead, super-visorship or otherwise. And I, the said Elizabeth Craw-ford, in consideration of the above covenants and agree-ments, and of one dollar to me in hand paid, do hereby release, convey and quit-claim to said John Kroell, Sr., all interest I may acquire, by virtue of such marriage, in and to all his property, both real, personal and mixed, now in his possession or that he may hereafter acquire, renouncing for-ever all claim, in law, equity or courtesy, dower, homestead, supervisorship or otherwise."

The parties to the contract were married on May 11, 1886, and on September 9, 1903, the husband, John Kroell, Sr., died intestate. No children were born of the marriage.

A motion has been made by defendant in error to dismiss the writ of error on the ground that the court has no juris-diction because the judgment of the Appellate Court is not final and the sum of $1000, exclusive of costs, is not in-volved. The only question in the case in the circuit court was whether the facts stated in the petition showed the peti-

tioner entitled to the widow's award. The court decided that she was not, but the Appellate Court reversed the judgment and remanded the cause to the circuit court for further proceedings not inconsistent with the views expressed in the opinion filed. In that opinion it was held that the petitioner had not released her right to the widow's award by executing the contract, and that she was entitled to have the appraisers appointed to set off such award. Upon the re-instatement of the case in the circuit court the only order that court could make, not inconsistent with the opinion of the Appellate Court, would be to appoint the appraisers and have the award set off. In such a case this court has jurisdiction to review the judgment on appeal or error, and the amount in controversy does not determine the question of jurisdiction. What the amount of the award made by the appraisers would be is, of course, unknown, but the proceeding is not in the nature of an action *ex contractu.* The motion to dismiss is denied.

By the contract each party released, conveyed and quitclaimed to the other all interest in the property of the other, both real and personal, "renouncing forever all claims, in law and in equity, of courtesy, dower, homestead, supervisorship or otherwise," and it is contended by counsel for defendant in error that these terms do not include the widow's award. That position cannot be sustained. The contract was evidently drawn by some person not familiar with legal terms, and "curtesy" was meant by the word "courtesy," and "survivorship" by "supervisorship." The right to a widow's award, under the statute, depends upon marriage, the continuance of the marriage relation until death, and the survivorship of the wife. The contract included all rights acquired by either one of the parties to it who should outlive the other, in the property or estate of the other, and clearly embraced the widow's award. The contract is sweeping in its terms, and includes every interest that the petitioner acquired in or to the property of her husband by virtue of the marriage and every interest which she would become entitled

to upon his death in case she survived him. The widow's award is of the same character and belongs to the same legal classification as dower and homestead, which are specifically mentioned, and it would be a wholly forced and unnatural construction of the contract that would exclude the widow's award. It can make no difference whether the interest of the husband in the property or estate of his deceased wife is of the same kind and amount as the interest of the wife in the estate of her deceased husband. Whatever interest either one acquired in the property or estate of the other was released by the contract.

It is further contended that the contract does not rest upon a sufficient consideration, and that an intended marriage is not such a consideration. The parties were married, and marriage itself has always been regarded as a sufficient consideration to support a marriage settlement. (*Otis* v. *Spencer,* 102 Ill. 622; 19 Am. & Eng. Ency. of Law,— 2d ed.—1233.) It was the only consideration in the ante-nuptial contract passed upon in the case of *Dunlop* v. *Lamb,* 183 Ill. 319. But in this case there was another consideration, which was the mutual covenants of the parties to waive their rights in the property of each other and the release of such rights. Each party conveyed and quit-claimed to the other all interest to be acquired, by virtue of the marriage, in the property, real and personal, of the other, and the mutual covenants were a good consideration. *McGee* v. *McGee,* 91 Ill. 548; *Barth* v. *Lines,* 118 id. 374.

The remainder of the argument in support of the judgment of the Appellate Court is based upon grounds of supposed public policy, and it is insisted that upon such grounds the court ought to construe the contract in favor of the widow and against the heirs and hold that a widow's award has not been relinquished. It is true that in the case of *Phelps* v. *Phelps,* 72 Ill. 545, the justice delivering the opinion indulged in observations on the subject of public policy, but the grounds of the decision were that a child was born

of the marriage and was living with the widow at the time of filing the petition; that a widow's award is for the joint benefit of the widow and the minor children of the decedent; that the specific allowance being as much for the benefit of the children as the widow, she has no power to deprive the children of such benefit by an ante-nuptial contract, and that to effect the purpose of the statute it is necessary that the widow shall share in the benefit of the award. If the wife had no power to release the widow's award because it was for the benefit of herself and the minor child, and the benefit of the provision of the statute could only be secured to the child by setting off the award to the mother as the natural guardian, the question of public policy was of no importance. If there was a want of power that fact was conclusive in the case, and the attempted release would have been ineffective no matter what public policy was. It is clear that the public concern that widows shall not become charges upon the public charitable institutions of the State was not the ground of the decision, inasmuch as the court said that if there had been no child or children of the decedent residing with the widow after his death a very different question would have been presented, and that in such a case the award would have been for her sole use and might be treated as a personal right which she could relinquish. It was distinctly held that the effect of the ante-nuptial contract was to bar her dower and prevent her taking any portion of the estate as heir under the statute, and so far as considerations of public policy that widows shall not become public charges is concerned, the same rule would apply to dower and inheritance as to the award. The court afterward defined the exact scope of that decision in *Weaver* v. *Weaver,* 109 Ill. 225, where the court said: "The only thing actually decided by the *Phelps case* is, that the award of a widow having a family consisting, in part, of a minor child of the deceased is not barred by an unexecuted ante-nuptial contract." The court also said: "The result of the decisions of this court, as we

understand them, go to this extent, but no further: A widow having a family consisting, in part, of the decedent's children is entitled to the widow's award notwithstanding there is an outstanding ante-nuptial executory contract by which she has agreed to accept a certain sum of money or something else in lieu of it." The court in that case held that the children of the deceased who were members of the widow's family had no vested right to the award, and that when the right to an award once accrued to a widow she might exchange the specific articles of property awarded to her or release them altogether.

The law has no policy against the making of contracts, or the enforcement of them, when executed by competent parties without fraud and with full knowledge of all material facts. While the law prescribes the rights of husband and wife in the property of each other, they may nevertheless, by ante-nuptial contract, determine for themselves what rights they may respectively have in their own and in each other's property during the marriage and what shall become of such property afterward. Such contracts are not against public policy, but, on the contrary, are considered as being generally conducive to the welfare of the parties. (19 Am. & Eng. Ency. of Law,—2d ed.—1225.) In *McGee* v. *Mc-Gee, supra,* the court expressed the opinion that such contracts between persons advanced in life, especially where they had previously been married and where there were children of both marriages, among whom there might be dissension as to the property, might be entered into with propriety, and the court said: "Such agreements are forbidden by no considerations of public policy, and there can be no reason why equity will not lend its aid to compel the surviving party to abide the contract." The contract in that case is substantially the same as this one, and was evidently used as a model, to some extent, in drafting this one. In *Barth* v. *Lines, supra,* an ante-nuptial agreement was held to bar the dower of the widow and it was enforced according to its terms. In

*Yarde* v. *Yarde*, 187 Ill. 636, it was said that although the statute would have given the widow more than the ante-nuptial contract, there was no reason why her contract for less than the amount given to her by the law, which she fairly entered into, should not bind her, and she must abide by it. In the case of *Christy* v. *Marmon*, 163 Ill. 225, it was held that the ante-nuptial agreement did not bar the inheritance of the wife, for the reason that it only provided for a certain annual payment as dower. There was no attempt in that case to eliminate anything from the contract or to restrict or limit it in any way on account of the hostility of the law to such contracts, and it was enforced according to its terms. In the case of *Zachmann* v. *Zachmann*, 201 Ill. 380, the decision rested upon the fact that there was a minor child of the decedent residing with the widow, and the rule that if there were no children of the decedent living with the widow an ante-nuptial agreement would be effective to bar her award was distinctly recognized. The same rule was held to extend to the homestead right and was applied in the same way on the same grounds, and the decision that the dower was not waived was upon the ground that the consideration could not be apportioned, which reason would not apply in a case where no question of apportionment is involved. If heirs should be willing that the entire consideration should be paid for that which was lawfully released, the widow would not be entitled to dower because there could not be an apportionment.

It was not decided in the case of *Friederich* v. *Wombacher*, 204 Ill. 72, that an ante-nuptial contract only becomes effective when accepted by the widow after the death of her husband. In that case the husband by his will gave to his wife all that she was entitled to under the ante-nuptial contract and all his personal property in addition thereto, and it was held that she was concluded by the acceptance of the provisions of the will under the well established rule that she could not claim under the will and at the same time set

up any claim inconsistent with it. It was said that although a husband could not, against the consent of the wife, deprive her of her homestead and widow's award, he could by his will give her money or property in such a manner that she would be concluded by her election to accept it. She is not deprived of her statutory right to a widow's award without her consent where she has released such right by a valid contract. In this case all rights which petitioner acquired under the statute by virtue of her marriage with John Kroell, Sr., and surviving him as his widow, were released by the antenuptial contract. The county and circuit courts correctly decided that question.

The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment reversed.*