IN THE MATTER OF THE ESTATE OF WM. L. ADAMS, DECEASED, J. B. COOK, EXECUTOR, AUGUSTA L. ADAMS, OBJECTOR TO FINAL REPORT, Apellant.

**Husband and wife:** ANTENUPTIAL CONTRACT: CONSIDERATION. The consummation of a marriage contract is a sufficient consideration to support an antenuptial agreement respecting the property rights of the parties. Nor was the contract in this case rendered invalid by the provision that ''neither is to be holden for the debts or contracts of the other.''

**Same:** RELINQUISHMENT OF PROPERTY RIGHTS. Parties contemplating marriage may relinquish their respective rights in the property of each other by an antenuptial contract, except as to the homestead.

**Same:** RELINQUISHMENT OF HOMESTEAD: ESTOPPEL. A wife who has enjoyed all the benefits of an antenuptial contract, including those to be performed after the husband's death, cannot claim, in her behalf alone, that the contract was void because it authorized the husband to dispose of the homestead without her signature, where he never in fact disposed of the homestead.

*Appeal from Chickasaw District Court.*—HON. A. N. HOBSON, Judge.

FRIDAY, APRIL 11, 1913.

The executor having filed a report reciting in substance that the estate of Wm. Adams, deceased, had been settled

save the payment of $1,000 to the widow in pursuance of the terms of an antenuptial contract, and that, though he had tendered the same, she had refused to receive it, and demanded her distributive share, prayed that he be directed to turn the same over to the clerk of court for her benefit, and that thereupon he be discharged and his bondsmen released.

The contract in language following was attached to the report:

Know all men by these presents: That Wm. L. Adams and Mrs. Augusta Randall have mutually agreed this day to become husband and wife according to law; and, whereas each party to this contract has certain property real and personal in his and her own right, it is therefore hereby mutually and forever agreed by the parties that each of them is to have the untrammeled and sole control of his or her own property real and personal which each now owns or may hereafter acquire absolutely and fully as though no such marriage had taken place and it is further mutually agreed that neither is to be made holden or liable for the debts or contracts of each other, but that each of them may sue and be sued and conduct his or her own business as though such marriage had never taken place. It is also agreed that each of the parties will be kind to one another and care for each other in case of sickness of either. It is also agreed that in case of the death of said Wm. L. Adams and the said Augusta Randall in case they marry should survive him as his widow, then and in that event she the said widow is to receive and be paid the sum of one thousand dollars out of the estate of said Wm. L. Adams payable within sixty days after the death of said Wm. L. Adams and the said widow, the second party to this contract, is also to have the right as such widow in case of the death as aforesaid of first party to occupy, use, and enjoy during her life or so long as she remains the widow of the first party the homestead left by first party at the time of his decease. It is further mutually agreed between the parties that in case of the death of either party hereto that his or her property and effects shall descend and belong to the heirs of the deceased only (except as to the $1,000 and the homestead for the second party as hereinbefore stated) or as each may

desire by will and that neither of the parties hereto shall have any right to any distributive share exemptions, or homestead right (except as to the $1,000 and homestead to second party as hereinbefore stated) and to any of the property of the other after the death of either party hereto, except that second party to have the $1,000 above stated and right to occupancy of homestead as stated and also the yearly allowance of support as the widow of second party in case of his death as provided by law. And the said parties hereby mutually agree to and with each other and do hereby renounce and relinquish all claim, right, title and interest as to the property of the other in any way or manner or by virtue of any statute by reason of the relation of husband and wife, except as to the $1,000 and occupancy of homestead and years allowance to the second party as widow as hereinbefore stated. Witness our hands this 18th day of July. 1895. Wm. L. Adams, Mrs. Augusta Randall.

Certain objections were interposed by Augusta L. Adams, the widow, and on hearing these were overruled, and the order entered as prayed ·by the executor. Mrs. Adams appeals.—*Affirmed.*

*R. Feyerbend* and *M. E. Geiser,* for appellant.

*Clary & Condon,* for appellee.

LADD, J.—The issues to be considered were raised by objections to the final report of the executor of the estate of Wm. L. Adams, deceased. ·The report recited that all debts and legacies of deceased had been paid, and that the sum of $1,000 stipulated in an antenuptial contract to be paid her had been tendered to and refused by his widow, Augusta L. Adams, and prayed that he be ordered to deliver the same to the clerk of court for her benefit, and that thereupon he be discharged and his bondsmen released. To this report Mrs. Adams interposed certain objections to accepting other than the statutory distributive share, and these were (1) that the antenuptial contract was void as against public policy;

(2) was obtained by fraud; and (3) the consideration had failed. The evidence failed to establish either of the last two objections. Possibly deceased was not always as considerate of his wife when ailing as he might have been, and his habits of economy may at times have degenerated into mere stinginess, but the evidence falls short of indicating such a degree of cruelty as would have justified separation. Indeed, the incidents related were such as are likely to occur in any family compelled to economize because of limited means, and their paucity in number during the sixteen years of married life is indicative that ordinarily his conduct was above reproach. Moreover, if there were some things to be condemned, all were condoned by subsequent cohabitation.

Nor does it appear that fraud was practiced in procuring the contract. True, Mrs. Adams testified that she knew nothing of its contents when she signed, and that she was not aware of its purpose, but in this she was contradicted by the recollections of the attorney who prepared it and her subsequent conversations with others. Its terms, in view of the age and relative situation of the parties, were not such that to procure her acquiescence fraudulant means likely would have seemed necessary. Without reviewing the evidence in detail, it is enough to say there was no fraud or failure of consideration; and, unless denounced as invalid as opposed to public policy, the contract must be given effect.

II. The antenuptial contract is assailed on the following grounds: (1) For the reason that there is no valid consideration to support said contract; (2) for the reason that said contract attempts to avoid liability on the part of the husband for the debts and contracts of his wife, and attempts to avoid liability of the wife for the debts and contracts of her husband during their marriage; (3) for the reason that said contract attempts to destroy the right of the widow to enjoy and use the homestead during her life after the death of the husband; (4) for the reason that said contract denies to the widow the right of homestead and exemptions provided

by statute; (5) for the reason that the parties to said contract entered into a contract to change their relations, disabilities, and duties, rights, and obligations as husband and wife toward each other, their prospective children and the public at large, and to change and fix the same otherwise than provided by the statutes of the state of Iowa.

The first two grounds are without merit. Marriage followed by consummation is sufficient consideration for such a contract. *Fisher v. Koontz,* 110 Iowa, 498; *Nesmith v. Platt,* 137 Iowa, 292. The contract contains

1. HUSBAND AND WIFE: antenuptial contract: consideration.

nothing relieving either party thereto from any indebtedness because of the married relation. Neither husband nor wife are liable for the debts or liabilities of the other unless made so by statute, and, when by statute made liable, the indebtedness becomes the obligation of both. See section 3165, Code. The provision that "neither is to be holden for the debts or contracts of the other" then has no application to the "expenses of maintaining the family." Just what was intended thereby in view of our statute enlarging the rights of married women is not apparent.

The last three grounds relate to the renunciation by each of all right in the property of the other. Aside from the homestead, such relinquishment has been too often upheld

2. SAME: relinquishment of property rights.

to require vindication as being legal at this time. But see *Jacobs v. Jacobs,* 42 Iowa, 600; *Peet v. Peet,* 81 Iowa, 172; *In re Devors Estate,* 113 Iowa, 4; *Fisher v. Koontz, supra.*

The more serious objection to the contract is that it in effect authorized the husband to dispose of the homestead at any time without the wife joining, and therefore is contrary

3. SAME: relinquishment of homestead: estoppel.

to public policy and void. It provides that "each of them is to have the untrammeled and sole control of his or her own property, real and personal, which each now owns or may hereafter acquire absolutely and fully as though no such marriage had taken

place." Further on the parties agree that they do "renounce and relinquish all claim, right, title, and interest as to the property of the other in any way or manner or by virtue of any statute by reason of the relation of husband and wife, except as to the $1,000 and occupancy of the homestead and year's allowance to the second party as widow." These provisions evidently were intended to give the husband absolute control of the homestead as well as the other property, save that she was to "occupy, use and enjoy, during her life, or so long as she remains the widow of the first party, the homestead left by the first party, at the time of his decease." Our statute declares that "the homestead of every family, whether owned by the husband or wife is exempt from judicial sale where there is no special declaration of statute to the contrary." Section 2972, Code. The next section defines family, and that following declares that "no conveyance or incumbrance of or contract to convey or incumber the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument." Section 2974, Code.

Other sections provide that the homestead may be sold on execution for debts contracted prior to its acquisition, and for those created by a written contract executed by the persons having power to convey. Section 2976, Code. What constitutes is defined in section 2977, Code. The extent and value in section 2978, Code. For selecting and platting is provided for in section 2779, Code. Section 2981, Code, provides that "the owner may, from time to time, change the limits of the homestead by changing the metes and bounds, as well as the record of the plat and description, or vacate it, but such changes shall not prejudice conveyances or liens made or created previously thereto, and no such change of the entire homestead, made without the concurrence of the husband or wife, shall effect his or her rights, or those of the children. The new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or

former one would have been." Section 2985 provides that, "upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law, but the setting off of the distributive share of the husband or wife in the real estate of the deceased shall be such a disposal of the homestead as is herein contemplated. The survivor may elect to retain the homestead for life in lieu of such share in the real estate of deceased." Section 2987: "Subject to the rights of the surviving husband or wife, the homestead may be devised like other real estate of the testator." These statutes plainly indicate the legislative design of fostering the interest of the family as such. This is done by protecting the home against the encroachments of creditors on the one hand, and on the other from alienation by husband or wife without the concurrence of the other. Thereby, something more than a mere privilege is created. *Sayers v. Childers,* 112 Iowa, 677.

It is the right to the enjoyment of the use of the property constituting the homestead and to protection therein during the periods designated, and is founded upon principles of the soundest policy, "those looking to the general welfare, as well as to that of the individual citizen, and the obvious intent of the act is to secure to every householder or head of the family, a home, a place of residence which he may improve and make comfortable, and where the family may be sheltered and live beyond the reach of those financial misfortunes which even the most prudent and sagacious may not avoid." *Franklin v. Coffee,* 18 Tex. 415 (70 Am. Dec. 292); *Wassell v. Tunnah,* 25 Ark. 113. See *Riggs v. Sterling,* 60 Mich, 643 (27 N. W. 705, 1 Am. St. Rep. 554); *Bunker v. Coons,* 21 Utah, 164 (60 Pac. 549, 81 Am. St. Rep. 680). In the last case it is said:

The taking away of the right to surrender future protection under exemption laws is based upon public policy, and

the probable needs of the family, the improvidence of many people when making contracts to be performed in the future, the danger of the weak being overreached by the strong, the interest of the state in preventing pauperism, and the necessity of guarding the impecunious from their own want of caution when releasing rights before the occasion of asserting them arises. In our opinion the homestead right, when vested in the head of a family as guaranteed by the Constitution and laws of this state, is not a right to the husband or other head of the family for their protection alone, but it is as well bestowed upon those enumerated in the statute as members of his household and under his care, protection, and maintenance while the statutory relation exists. It was intended to secure and protect the home as such not only against creditors, but as against every act on the part of the head of the family not authorized by law, by which he could in advance barter away the right to the homestead, and thereby sacrifice the home as against himself and those constituting his family and under his care and maintenance. Therefore no waiver of the homestead right, as contained in the contract offered in evidence, could affect the right of the head of the family, or those under his care and maintenance as members of his legal household. To uphold such a contract would be against public policy.

The authorities cited in the opinions from which these excerpts are taken fully support them, and the principle is of general acceptance. See, also, Waples on Homestead and Exemption, 545. The author cited says that: "Where the exemption is for the protection and benefit of the wife and children as well as himself, the husband cannot waive the right of homestead." No such act on the part of a husband or father or of a wife or widow or of any person as might estop him or her personally from claiming a homestead right can possibly debar others who have rights therein from their interest. Such rights of others render his own inviolable, since they are separable from his. What might be an act in pais operating as an estoppel were it alone concerned would not be such when the rights of those to be protected through him are involved. He would not be estopped from claiming a homestead, though he had solemnly promised not

to claim, and had received a consideration equivalent to the value of his right. The extent of the protection and the nature of the right is clearly indicated by these authorities, but they relate thereto during the life of both husband and wife.

In *Re Estate of Miller,* 143 Iowa, 120, and *In Re Johnson's Estate,* 154 Iowa, 118, this court held that no "provisions in antenuptial contracts, no matter how fair and reasonable, can deprive the prospective wife of the right to an allowance of support under the statute, provided the court finds such allowance to be a proper one when applied for as widow."

In *McGee v. McGee,* 91 Ill. 548, the court concluded that, where the parties entering into an antenuptial contract subsequently had children, a provision barring the widow of the right of a homestead would be void, saying:

The exemption is absolute except it is alienated in the mode prescribed in the statute and no release of homestead is valid unless by the parties intended to be benefited in conformity with the law that confers the power to alienate it at all. The policy of the law is, as this court has had frequent occasion to declare, to preserve the homestead for the benefit of the family, as well as the householder himself. The statute was no doubt enacted from motives of public concern, and it is apprehended it is not in the power of the father and mother, by an ante-nuptial agreement, to so provide as to deprive their minor children of its benefits in case of their death.

Further on:

It is a matter of public concern and the beneficent provisions of the statute for the protection of the family cannot be abrogated by mere private contract between parties not alone within its provisions.

In *McMahill v. McMahill,* 105 Ill. 596 (44 Am. Rep. 819), the court says that "the principle is the statute secures the

homestead to the husband or wife surviving, and such right can only be extinguished in the mode provided by statute. It cannot be done by an antenuptial agreement, for the simple reason that is not one of the modes provided by statute by which such right may be extinguished. . . . It was thought to be a matter of public concern, for which the Legislature could well provide for its permanent security."

In *Kroell v. Kroell*, 219 Ill. 105 (76 N. E. 63, 4 Ann. Cas. 801), the Illinois cases are reviewed, and the conclusion reached that the widow "is not deprived of her statutory right to a widow's award without her consent where she has released her right by a valid contract. In this case all rights which petitioner acquired under the statute by virtue of her marriage with John Kroell, Sr., and surviving him as his widow, were released by the antenuptial contract." And in the course of the opinion it was said, referring to *Phelps v. Phelps*, 72 Ill. 545 (22 Am. Rep. 149) : "If the wife had no power to release the widow's award because it was for the benefit of herself and the minor child, and the benefit of the provision of the statute could only be secured to the child by setting off the award to the mother as the natural guardian, the question of public policy was of no importance. If there was a want of power, that fact was conclusive in the case, and the attempted release would have been ineffective, no matter what public policy was. It is clear that the public concern that widows shall not become charges upon the public charitable institutions of the state was not the ground of the decision, inasmuch as the court said that, if there had been no child or children of the decedent residing with the widow after his death, a very different question would have been presented, and that in such a case the award would have been for her sole use, and might be treated as a personal right which she could relinquish. It was distinctly held that the effect of the antenuptial contract was to bar her dower and prevent her taking any portion of the estate as heir under the statute, and, so far as considerations of public policy that widows

shall not become public charges is concerned, the same rule would apply to dower and inheritance as to the award.'' There was no child by the marriage, and the widow was held to be bound by the terms of the antenuptial contract, but the rule seems to be different where a child is subsequently born. In that event, Illinois decisions are to the effect that the relinquishment of the homestead is of no validity. *McGee v. McGee, supra.*

In *Zackmann v. Zackmann*, 201 Ill. 380 (66 N. E. 256, 94 Am. St. Rep. 180), the antenuptial contract relinquishing the homestead was held invalid, there being a child, and, as the payment to the widow was of a gross sum, the court held the contract indivisible, and set it aside. It will be observed that in all these cases the question arose as to the right of enjoying the homestead after the death of the husband. Here that right was expressly preserved to the wife during widowhood, as was also that to allowance to her as widow. The contention of appellant, notwithstanding this, is that the contract was void, in that it stipulated in effect that the husband should have absolute control of the homestead if in his name during life and might alienate it without the wife's consent. His children had attained majority and had left home. Mrs. Adams then had two children, both of whom were under fourteen years of age and were living with her, but there were no children as the fruit of the marriage and her daughters had married prior to the husband's death. Her situation then was analogous to that of the widow in *Kroell v. Kroell, supra,* in which her renunciation of right of homestead as surviving spouse was sustained. The same rule prevails in Kansas and Minnesota. *Hafer v. Hafer*, 36 Kan. 524 (13 Pac. 821); *Appleby v. Appleby*, 100 Minn. 408 (111 N. W. 305, 10 L. R. A. (N. S.) 590, 117 Am. St. Rep. 709, 10 Ann. Cas. 563), and by this court in *Weis v. Bach*, 146 Iowa, 320. See, also, *Rieger v. Schaible*, 81 Neb. 33, 58 (115 N. W. 560, 116 N. W. 953, 17 L. R. A. (N. S.) 866, 16 Ann. Cas. 700); *Chaffee v. Chaffee*, 70 Vt. 231 (40 Atl. 247),

In Waples on Homestead and Exemptions, 612, the author, after calling attention to the decisions, says:

Suppose, however, the homestead right of the widow is as strictly personal to herself as her dower right, that neither minor children's benefit nor the state's interest in the preservation of homes is involved, that she takes her homestead portion as an·estate as she does her dower portion; what reason then exists for differentiating the two rights with respect to the validity of their antenuptial disposition for consideration received or promised? If, shorn of connection with minor children, and with the state as an interested party, the widow pleads (at the time when all heirs are of age) that she, having taken the consideration, may now repudiate her marriage contract for her own selfish ends, it would seem that she ought to be held to the rule governing her waiver of dower.

The author also points out that the statutes with reference to the alienation of homestead have reference to such alienation after the homestead has been acquired, and that a waiver by antenuptial contract of the prospective right thereto ought not to be included as within the statutory limitations. Such a contract is made when each party has the power to deal with his property as he chooses, and the true objection to eliminating the right to claim homestead is that this does not accord with the general policy of the state; such policy being to protect the homestead, it ought not to be allowed to be defeated by the bartering of it away in advance. Had the husband undertaken to alienate or change his homestead during life without the wife's concurrence, the validity of the clause in the antenuptial contract according him the right to do this might well have been tested. For all that appears, no differences of the kind arose. The appellant has enjoyed all the advantages derived from the marriage, and ought not now to be permitted to repudiate the antenuptial contract under which these were obtained on the plea that deceased might have thought to but did not deprive her of the enjoyment of

their homestead. As an adult she was competent to contract. That which was agreed to concerned herself only. Having enjoyed all the benefits to be derived from the antenuptial contract, even those to be performed after the husband's death, she is not in a situation to contend in her behalf alone that provisions therein which may not have been enforceable had their enforcement been undertaken render the agreement void.

The district court rightly overruled her objections to the final report, and its order is *Affirmed*.