JOSEPHINE C. FINN et al., Appellees, v. MARIA GRANT et al., Appellants.

No. 44070.

MARCH 8, 1938.

Verne A. Mettler and Nels Quevli, for appellants.

Fitzpatrick & Barlow and Dunn, Wiegman & Danforth, for appellees.

KINTZINGER, .J.—The evidence in this case shows without dispute that the defendant Nels Quevli, aged about 50, and Anna MaGuire, aged about 63, were united in marriage at the homestead of the bride in Mason City, Iowa, at 8:30 p. m. on January 21, 1914. Mr. Quevli had been married before. The record also shows that prior to the marriage an antenuptial agreement between the parties was drawn up in triplicate at an attorney's office in Mason City. Plaintiffs contend that this contract was entered into between the parties prior to the marriage. The antenuptial contract alleged to have been entered into is as follows:

"ANTE-NUPTIAL AGREEMENT

"This agreement made in triplicate on this 20th day of January, A. D. 1914, by and between Anna MaGuire of Mason

City, Iowa, party of the first part, and Nels Quevli of Lakefield, Minnesota, party of the second part, witnesseth:

"Whereas, it is agreed by and between the parties hereto that a marriage is shortly to be had and solemnized between them upon the considerations (among others) in these presents hereinafter more fully set out; and

"Whereas, each of the said parties is possessed of considerable property, both real and personal, in his or her own right, and

"Whereas, it is the mutual desire of the parties that all property and property rights of each shall be, and be maintained, for the benefit of him, or her, and his or her heirs, legal representatives and assigns as though no marriage relation ever existed between them;

"Now therefore, in consideration of the premises the parties thereto agree and covenant each with the other, as follows, to-wit;

"First: Each of the parties hereto shall own the property, of whatsoever nature, kind and description now owned or hereafter acquired by him or her, and shall have the exclusive use, control and benefit of the same, with the right to sell, convey, mortgage, pledge and otherwise deal with the same, as though he or she had been at all times unmarried; that each may dispose of his or her said property by will as though no relation had been had between them; and each of the said parties does hereby disclaim and release to the other or his or her heirs, legal representatives, assigns, legatees and devisees all and every right, claim and estate, which she or he might, would or could have, hold or acquire in, to, or upon all or any of the said property of the other by reason of said marriage and by reason of being, or having been, the spouse of the other.

"Second: And it is further expressly agreed and covenanted by and between the parties hereto that in order to facilitate the use, conveyance, transfer or encumbrance by either of his or her said property, the other shall duly execute any and all instruments whenever requested so to do, and wherein such execution is for the apparent purpose of relinquishing any right arising under the law by reason of their marital relations; and this agreement may be specifically enforced by any court having jurisdiction upon the application of the said other party, his heirs, legal representatives or assigns.

"In witness whereof the parties hereto have affixed their signatures at Mason City, Iowa, on the day and year last above written.

> "[Signed]  Anna MaGuire
> "[Signed]  Nels Quevli"

I. Although the antenuptial agreement is dated on January 20, 1914, the evidence shows that it was signed by both parties on the afternoon of January 21, 1914, and prior to the marriage. The defendant Nels Quevli claims that it was not signed and delivered prior to the marriage. The testimony, however, shows, and he admits, that he signed the agreement during the afternoon of January 21, 1914. The only denial made by him as to its being signed by Mrs. Anna MaGuire Quevli prior to the wedding is the following: "Well, I signed it, but I don't know whether she signed it or not."

It is also stipulated that during the afternoon prior to the wedding Mrs. Quevli delivered these three signed papers to Miss Finn, her cousin, to hold for safekeeping until she and Mr. Quevli returned from their wedding trip. The record also shows without dispute that at that time all three copies had been signed by both Anna MaGuire and Mr. Quevli, the prospective bride and groom.

■■■ The defendant Nels Quevli also contends that, because the original acknowledgment blank appearing on the antenuptial contract was not filled out, the agreement is invalid. This antenuptial contract, however, is simply a contract and needs no acknowledgment. He also contends that, because an acknowledgment was added to the contract several years after it was signed, such fact tends to show that it was never executed until after the marriage.

The acknowledgment later added to the agreement is in the following words, to wit:

"State of Minnesota, Jackson County, SS:

"On Nov. 21, 1925, before me a Notary Public in and for said County and State personally appeared Anna MaGuire and Nels Quevli to me personally known to be the identical persons named in and who executed the foregoing ante-nuptial contract, and acknowledged the execution of the same to be their voluntary act and deed.

"Witness my hand and Notarial Seal the day and year last above written.

[Notarial seal]      [Signed]  Anthony S. Quevli

"Anthony S. Quevli, Notary Public, Jackson County, Minn.

"My commission expires Aug. 12, 1926."

This acknowledgment simply shows that the contract had, in fact, been entered into. It does not state that it was signed at the time it was acknowledged. It only shows that the acknowledgment was made on November 21, 1925, but does not state that it was executed on that date, because a contract already entered into may be acknowledged later.

Mr. Quevli testified that he signed the three copies of the agreement prior to the marriage, *but did not know whether she signed them then or not*; but Josephine Finn testified that all three copies were signed by both parties during the afternoon of January 21, 1914, before the marriage which took place at 8:30 that evening. She testified that after they were signed Anna MaGuire brought them to her for safekeeping until after they returned from their wedding trip. Miss Finn said she kept the three copies in the bank until after they returned. She did not give Mr. Quevli a copy because Anna MaGuire told her that he did not want any. He told Miss Finn that he had signed the agreement and did not deny that they both signed it before the marriage. She testified that she knew their signatures and that the copies of the contract were all signed before the marriage. That the copies of the contract were delivered to Mrs. Quevli is also borne out by the fact that after they were signed by both parties she had possession thereof.

■■■ Without setting out other evidence in detail, it is sufficient to say that we have examined the same carefully and have reached the conclusion that this antenuptial agreement was, in fact, entered into and executed on the afternoon of January 21, 1914, prior to the marriage. We are, therefore, constrained to hold that it is a valid contract and binding on both parties.

The antenuptial agreement states that:

"It is the mutual desire of the parties that all property and property rights of each shall be, and be maintained, for the benefit of him, or her, and his or her heirs, legal representatives and assigns as though no marriage relation ever existed. * * *

"Each of the parties hereto shall own the property, of whatsoever nature, kind and description now owned or hereafter acquired by him or her, and shall have the exclusive use, control and benefit of the same, with the right to sell, convey, mortgage, pledge and otherwise deal with the same, as though he or she had been at all times unmarried; that each may dispose of his or her said property by will as though no relation had been had between them; and each of the said parties does hereby disclaim and release to the other or his or her heirs, * * * all and every right, claim and estate, which she or he might, would or could have, hold or acquire in, to, or upon all or any of the said property of the other by reason of said marriage, and by reason of being, or having been, the spouse of the other."

■■■ An agreement of this kind is valid and operates to extinguish the homestead right of either in the property of the other. Weis v. Bach, 146 Iowa 320, 125 N. W. 211; In re Devoe's Estate, 113 Iowa 4, 84 N. W. 923; Fisher v. Koontz, 110 Iowa 498, 80 N. W. 551; Weismann v. Weismann, 150 Iowa 307, 130 N. W. 155; In re Estate of Thorman, 162 Iowa 316, 144 N. W. 5; In re Estate of Adams, 161 Iowa 88, 140 N. W. 872; Kroell v. Kroell, 219 Ill. 105, 76 N. E. 63, 4 Ann. Cas. 801; In re Estate of Shepherd, 220 Iowa 12, 261 N. W. 35.

In Weis v. Bach, 146 Iowa 320, l. c. 322, 125 N. W. 211, 212, we said:

"There is nothing in the record in this case to impeach the fairness and equity of the agreement on the part of defendant to forego all the rights which he would have otherwise acquired by marriage in the property of his wife in consideration of her like relinquishment of all interest in his own property, and we reach the conclusion that, under the contract, defendant never acquired a homestead interest in any property covered by the terms of the contract, and that any such property could be conveyed by defendant's wife after the marriage without the necessity of joinder therein by the defendant to relinquish his dower and homestead rights."

In In re Estate of Thorman, 162 Iowa 316, l. c. 321, 144 N. W. 5, 7, this court said:

"Appellant contends that the court erred in overruling the demurrer for the reason that the widow's share cannot be af-

fected by the will of her husband, unless she consents thereto, etc. This, we presume, has reference to the unprobated will. * * * But, as we have already stated, we think this alleged will is not material. The antenuptial contract waives and bars her distributive share.''

This court in In re Estate of Adams, 161 Iowa 88, l. c. 97, 98, 140 N. W. 872, 876, referred to the case of Kroell v. Kroell, 219 Ill. 105, 76 N. E. 63, 4 Ann. Cas. 801, in which that court held that all rights of a spouse acquired under the statute by virtue of marriage were released by the antenuptial contract. This court in In re Estate of Adams, supra, said:

''The contention of appellant * * * is that the contract was void, in that it stipulated in effect that the husband should have absolute control of the homestead if in his name during life and might alienate it without the wife's consent. His children had attained majority and had left home. Mrs. Adams then had two children, both of whom were under fourteen years of age and living with her, but there were no children as the fruit of the marriage and her daughters had married prior to the husband's death. Her situation then was analogous to that of the widow in Kroell v. Kroell, supra, in which her renunciation of right of homestead as surviving spouse was sustained.'' (Citing cases.)

In the case at bar there were no children as a result of the marriage between Mr. and Mrs. Quevli. At the time of the marriage he was over 50 and she was over 63. We are constrained to hold that under the facts in this case each of the parties had unequivocally agreed to release all interest in the other's property, and that the same should descend in the same manner as if no marriage had existed. We are therefore constrained to hold that the property in question descended to the natural heirs of Mrs. Anna MaGuire Quevli.

II. Mrs. Anna MaGuire Quevli died on March 2, 1934, seized of the property in question at Mason City, Iowa, as her homestead. As a result of the antenuptial contract, Mrs. Anna MaGuire Quevli's property descended to her blood relatives. It was stipulated between the plaintiffs and the defendant Nels Quevli that if it should be found that he had no interest in the property in question the property descended to the two plain-

534

tiffs and the following sixteen defendants, in equal parts, as follows: Josephine C. Finn, Frances McGuire Dorsey, Maria Grant, Lawcine McGuire, Wallace McGuire, Frank McGuire of Dubuque, John Cully, J. C. McGuire, F. P. Finn, N. E. Finn, W. W. Finn, J. L. Finn, Charles McGuire, Joe McGuire, Mrs. Mary Sharon, Frank McGuire, of Madison, Wisconsin, Mrs. Cloe McCurnin, and Mrs. Addie Buggy, each being entitled to an undivided one-eighteenth interest in said property, as legal heirs of Anna MaGuire Quevli.

The record shows that some of the other defendants named in this action, through themselves or their assignees, make some claim against the decedent's homestead. Such claims, however, were not made in the probate proceedings in the estate of Mrs. Quevli, and were not allowed by the probate court within the time allowed for filing claims therein, and were not established by competent evidence. None of such claims were shown to be a lien or incumbrance against the homestead property in question, and it is therefore not subject thereto.

III. Defendant Nels Quevli also contends that by reason of agreements made between him and Josephine C. Finn and Joe McGuire the one-eighteenth interest of each of said parties was assigned to and now belongs to him.

No evidence, however, has been presented in the record before us to establish the execution of any such agreements.

IV. Appellant Nels Quevli contends that notwithstanding the antenuptial agreement he had a right to continue to possess and occupy the whole homestead until it is otherwise disposed of by law, under the provisions of section 10145 of the Code of 1935. Under the antenuptial agreement, however, the appellant waived his right in the homestead property, and at Mrs. Quevli's death he had no dower interest or distributive share to be set off. Not having any distributive share in the homestead, it could not be set apart to him.

The possession given to a spouse under section 10146 of the Code is a life estate in lieu of a distributive share, but as the spouse in this case had no distributive-share, it naturally follows that he could not have the right to occupy the same for life.

It may also be said that almost immediately after the death of his wife, Mr. Quevli leased the property in question under his assumed ownership thereof to others. Therefore, if he had any

right to the possession of the property as a homestead, it was abandoned through its rental by him to others.

■■■ V. Appellant Emma Pederson contends that she had a right to a mechanic's lien against the property in question. In the first place, the evidence fails to show that her claim for a mechanic's lien was ever foreclosed within the time allowed by statute, and she, therefore, has no lien against the property in question.

Such lien cannot be established for the further reason that her contract for the furnishing of material and labor upon the premises in question was not made with the owners thereof. As hereinabove stated, the title of the property in question vested in the natural heirs of Anna MaGuire Quevli at her death, and as no contract for the furnishing of material and labor was ever made with them, or their agents, she has no lien against the property.

VI. The defendant Hayward Farms Company also claims to have an interest in the property in question by reason of a quitclaim deed from Joe McGuire transferring his interest in said property to the Hayward Farms Company. This deed has been offered in evidence and shows such a conveyance to that company. As Joe McGuire's interest in the property was an undivided one-eighteenth interest therein, that company has established its ownership of such undivided interest in said property.

Said Hayward Farms Company also claims to have a conveyance from Nels Quevli conveying his interest in the property to it. No deed, however, of any such conveyance has been introduced in evidence. The record also fails to show that Nels Quevli ever had any title to said property and therefore could not have conveyed the same.

■■■ VII. The defendant First National Bank of Lakefield, Minnesota, also claims an interest in the property in question to the extent of $3,840 by reason of a settlement in that amount made between that defendant and Nels Quevli, the administrator of the estate of Anna MaGuire Quevli, based upon a mortgage and judgment alleged to have been held by said bank against Mrs. Anna MaGuire Quevli. The record in this case fails to show that the mortgage or judgment upon which this claim is based had ever been liens against the homestead of Anna MaGuire Quevli. The record also shows that the judgment

536

upon which this claim is based, in part, cannot be enforced against the property under section 11033-e1 of the Code of 1935.

As a further defense to this claim, it is alleged, and the record shows, that such alleged settlement was never approved or authorized by the probate court in which the estate of Anna MaGuire Quevli was pending. The record also shows that this claim was never filed and allowed in the estate of Anna MaGuire Quevli within the time allowed by statute. For this additional reason it is barred by the statute of limitations as more than three years have elapsed since the appointment of the administrator, without the filing thereof.

No other defendants have appealed.

For all the reasons hereinabove expressed, we are constrained to hold that the judgment and decree of the lower court is correct in all respects, except that the Hayward Farms Company, as shown by Division VI hereof, is entitled to an undivided one-eighteenth interest in and to said property. The decree of the lower court is therefore hereby affirmed with this exception, and remanded with instructions to enter a decree in harmony herewith.—Modified and affirmed.

STIGER, C. J., and ANDERSON, DONEGAN, HAMILTON, SAGER, and MILLER, JJ., concur.